389 A.2d 1034

**TINICUM REAL ESTATE HOLDING CORPORATION,**
**Appellee,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF**
**TRANSPORTATION, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1977.

Decided July 14, 1978.

222

Roger T. Shoop, George Luskus, Asst. Attys. Gen., for appellant.

Edward Kassab, Media, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

EAGEN, Chief Justice.

On May 20, 1968, the appellant, Commonwealth of Pennsylvania, Department of Highways, now known as Department of Transportation (PennDOT), filed a declaration of taking condemning, for highway purposes, 23.63 acres of a 276.85 acre tract in Delaware County held by the appellee, Tinicum Real Estate Holding Corporation (Tinicum). Tinicum filed a petition for the appointment of viewers, and after a board of view hearing, the report of viewers awarded Tinicum $1,144,000.00 as damages. This included $900,000.00 for general damages and $244,000.00 for severance damages. Both parties filed an appeal in the Court of Common Pleas. A jury awarded Tinicum $384,300.00 as damages for the

taking. The difference between the board of view award and the jury award was thus $759,700.00. Tinicum then filed a motion for a new trial, which the trial court granted. From this order, PennDOT appealed to the Commonwealth Court which affirmed the order granting Tinicum a new trial. *Tinicum Real Estate Holding Corporation v. Commonwealth,* 25 Pa.Cmwlth. 47, 358 A.2d 116 (1976). PennDOT filed a petition for allowance of appeal from the order of the Commonwealth Court which was granted. For the following reasons, we reverse the order of the Commonwealth Court and order the verdict of the jury reinstated.

At trial, it was stipulated that the highest and best use of the land was commercial—industrial. Tinicum then presented two expert witnesses. The first, Herbert E. MacCombie, Jr., a professional engineer, testified as to a detailed description of the property. Out of the total 276.85 acre tract originally held by Tinicum, 23.63 acres were taken; 19.01 acres were condemned for the right of way of Interstate 95, and 4.62 acres, for the slope of the highway. As a result of the taking, the remaining property of 253.22 acres was severed into two tracts of 40.42 acres and 212.80 acres, respectively. Mr. MacCombie offered no opinion as to the before-taking or after-taking fair market value of the property.

Tinicum's other expert witness was John D. Bloodwell, a real estate appraiser and consultant. Relying on what he considered to be seven comparable sales, he testified that the fair market value of the land, prior to the taking and unaffected thereby, was $6,311,000.00, and its fair market value, after the taking and as affected thereby, was $4,747,-000.00. Thus, the resultant figure for damages done to Tinicum by the taking was $1,564,000.00.

PennDOT then presented three expert witnesses. The first two were professional engineers who testified as to their role in preparing the land for construction of the highway, one of whom stated that the 47 test soil borings made by his firm on the property in question indicated that

the first 19 feet of material in the area of the property where the highway was to be built was unsuitable for construction, and new fill material had to be put in its place. Neither offered any opinion as to the before-taking or after-taking fair market value of the property.

PennDOT's real estate appraisal expert witness was Richard DeGrouchy. Relying on what he considered to be eight comparable sales, he testified that the fair market value of the land, before the taking and as unaffected thereby, was $3,166,000.00 and that the fair market value, after the taking and as affected thereby was $2,957,000.00. Thus, the resultant damage to Tinicum was placed at $209,000.00 by PennDOT.

As related before, the jury awarded damages in the amount of $384,300.00. Concluding this was inadequate, the trial court awarded a new trial.

■■ In the exercise of sound discretion a trial court may grant a new trial in an eminent domain case solely on the ground the jury's verdict was inadequate, providing specific and valid reasons are given to show the verdict is not truly reflective of the damages suffered. *Mazur v. Commonwealth,* 390 Pa. 148, 134 A.2d 669 (1957). And in an appeal from an order granting or refusing a new trial on the ground of inadequacy our scope of review is limited to a determination of whether the trial court was guilty of a manifest abuse of discretion or an error of law. *Springer v. Allegheny County,* 401 Pa. 557, 165 A.2d 383 (1960).

Here the trial court cited four specific factors for its conclusion that the jury's verdict was inadequate:
 (1) the disparity between the board of viewers' award and the jury verdict;
 (2) the disparity between the valuation opinions of Tinicum's and PennDOT's expert appraisal witnesses;
 (3) the jury's award bore no relation to the testimony presented by the respective experts;

(4) the jury was confused by the wide disparity of expert opinions, and thus lost sight of the vast potential for development of the land in question.[1]

As noted the first factor was the disparity between the board of view award of $1,144,000.00 and the jury award of $384,300.00, a difference of $759,000.00.

 In an appeal to a court of common pleas from a board of viewers' award, the trial is an entirely *de novo* proceeding. Eminent Domain Code, Act of June 22, 1964, Spec. Sess., P.L. 84, Art. VII, § 703, as amended by Act of December 5, 1969, P.L. 316, § 1, 26 P.S. § 1–703 (Supp. 1977–78) (hereinafter cited as Eminent Domain Code); *Manganese Steel Forge Co. v. Commonwealth,* 421 Pa. 67, 218 A.2d 307 (1966). Although the amount of the board of viewers' award is not admissible into evidence at trial, Eminent Domain Code § 703(3), 26 P.S. § 1–703(3), the trial court may properly consider it to determine whether a verdict is excessive or inadequate when the issue is raised by either party's motion for a new trial. *Boring v. Metropolitan Edison Co.,* 435 Pa. 513, 257 A.2d 565 (1969). See also *Stoner v. Metropolitan Edison Co.,* 439 Pa. 333, 266 A.2d 718 (1970) and *Poulos v. Commonwealth,* 438 Pa. 442, 266 A.2d 100 (1970). But the *mere* disparity between the two aforementioned awards is not sufficient grounds for granting a new trial, *Boring v. Metropolitan Edison Co.,* supra. As we said in a case where the condemnor claimed the verdict was excessive:

"Our holdings in this regard are grounded upon the nature of the jury trial in a condemnation action. The jury trial provided by . . . the Code is a *de novo* proceeding. . . . Accordingly, the parties may present a case at trial which deviates considerably from that put before the Board of Viewers. Undue attention on appeal to the magnitude of the viewers' award would effectively deprive the dissatisfied condemnee of his statutory right to a jury determination of damages. . . . Rather than

1. It is impossible to determine from the court's opinion whether any one factor was given more weight than another.

resting upon a comparison between the viewers' award and the jury verdict, our decision as to whether a new trial is called for requires a review of the testimony presented at trial to determine whether the jury verdict was excessive."

*Stoner v. Metropolitan Edison Co.,* 439 Pa. 333, 336–37, 266 A.2d 718, 721 (1970). Since we perceive no reason in the present context for distinguishing a claim of an excessive verdict from the claim in the instant case of an inadequate verdict, the same principles, *mutatis mutandis,* which we enunciated in *Stoner* are applicable instantly. Thus, while the trial court in considering a motion for a new trial, may properly consider the amount of the board of viewers' award, that consideration is only one factor to be considered and is secondary to a review of the entire evidence presented at trial.

The second factor cited by the trial court for its conclusion that the jury's verdict was inadequate was the disparity between estimates of value expressed by the appraisal witnesses.

The Commonwealth argues ". . . such a consideration is a fact of life in eminent domain proceedings, and is clearly for the jury alone to consider and weigh in arriving at their verdict." We do not accept this as stated.

While it is true that the disparity in valuation between various experts is properly for the jury's determination, *Morrissey v. Commonwealth, Department of Highways,* 440 Pa. 71, 75, 269 A.2d 866 (1970), it does not necessarily follow that the trial court is absolutely precluded from considering such a factor in passing on a motion for a new trial. Cf. *Mazur v. Commonwealth,* supra.[2] However,

2. The Commonwealth argues this holding in *Mazur v. Commonwealth* was overruled by *Springer v. Allegheny County,* 401 Pa. 557, 165 A.2d 383 (1960). We do not agree. In *Springer* the board of viewers' award was $86,296.50. At trial, the condemnee's three experts gave estimates of $205,000.00, $206,000.00, and $210,000.00 respectively, the condemnee's own estimate was $225,000.00. The condemnor's two experts estimated the fair market value at $48,-500.00 and $50,000.00, respectively. The jury awarded $76,000.00.

it is clear beyond dispute, that the trial court may not grant a new trial solely because of such disparity. *St. Clair*

The trial court granted a new trial *because* the verdict was against the weight of the *credible* evidence, and for two other reasons not relevant here. On appeal, we reversed and remanded for entry of judgment on the jury's verdict. *Springer* held, inter alia, that the trial court abused its discretion in granting a new trial on the ground that the verdict was against the weight of the *credible* evidence since *the credibility of oral opinion testimony is peculiarly for the jury to appraise and not for the court. It also noted* that the verdict there was not against *the weight* of the evidence. 401 Pa. at 560, 165 A.2d at 385. Furthermore,

"If what the court meant by its reference to the *credible* evidence was that the jury should have given greater effect to evidence adduced by the plaintiff and returned a larger verdict, it is to be *noted that the verdict was not so disproportionate to what the* board of view had awarded the plaintiff as to justify the trial court in concluding that it was inadequate. Cf. *Mazur v. Commonwealth*, 390 Pa. 148, 151–152, 134 A.2d 669." [Emphasis in original.]

401 Pa. at 562, 165 A.2d at 386.

For our purposes here, *Springer* dealt with 1) the granting of a new trial on a totally invalid ground (verdict against weight of *credible* evidence), and 2) an observation that the verdict was not against the weight of the evidence. On the other hand, *Mazur* dealt with the granting of a new trial because the verdict was inadequate.

The failure to make and observe the above distinctions can engender much confusion. Some of the common reasons given for a trial court setting aside a verdict and granting a new trial are that the verdict is:

1) contrary to law, or
2) contrary to evidence, or
3) against the weight of the evidence, or
4) *either* excessive *or* inadequate.

These reasons constitute *separate and distinct* grounds for granting a new trial. See 6A Standard Pennsylvania Practice 97 *et seq.* Our concern instantly is with the third and fourth grounds listed above.

A new trial will be granted on the ground that the verdict is against the weight of the evidence when:

1) *after the verdict, it appears that the evidence in support of the* case or the issues therein, although legally sufficient to sustain the verdict, is slight, *and*
2) the evidence to the contrary is so clearly preponderant that the verdict must be considered capricious.

See 6A Standard Pennsylvania Practice 104, 105 *et seq.*

On the other hand, although the assessment of damages is peculiarly the province of the jury, if damages given are either so large or so small as to create the conviction that the jury acted under the influence of a perverted judgment, a new trial will be granted on the ground that the verdict is either excessive or inadequate. See 6A Standard Pennsylvania Practice 113, 114 *et seq.*

*Cemetery Association v. Commonwealth,* 390 Pa. 405, 136 A.2d 85 (1957).

The third factor cited by the court for its conclusion the verdict was inadequate was that the jury's award bore no relationship to the testimony presented by the experts. With this we do not agree.

In this connection we initially note that the trial court instructed the jury in part as follows:

"Now all of the experts called in this case disagreed, as you know. And since they are merely expressing an opinion, you may reject in toto the opinion of any witness whom you disbelieve, regardless of whether there has been contradiction or not. You may take into consideration the experience and qualifications of the experts as well as your own judgment in determining the weight of testimony of the various experts.

\* \* \* \* \* \*

"You are again advised and instructed that expert witnesses are not the jury, and that the testimony of the experts that you have heard is merely opinion testimony. That testimony may be of value to you and it may be of no value. You, the jury, are free to exercise your own judgment and are not bound by the opinions of the witnesses.

"Members of the Jury, you alone are to say from the evidence just what value this property had prior to the taking, and just what value it had afterwards, as affected by that appropriation. The opinions of the experts who presumably have superior knowledge on the subject is evidence which comes to your assistance and which must be appraised by you, but you are the final arbiters of value, once you have considered all of the evidence properly before you. The viewing of the property by you is also evidence in this case; that is the trip that you took at the very upset of this trial, and it shall be considered by you along with all the other evidence."

Also, the jury in the course of its deliberations sent the court a note as indicated in the record by the following:

"THE COURT: Let the record show that I have just received a note from the jury, who have been out deliberating for thirty minutes; and the note reads as follows: Are we to decide on the Commonwealth's figures or the plaintiff's, or are we suppose to reach a figure on total property ourselves?"

The court answered:

"The attorneys have agreed that I should send the following reply to the jury: You are required to consider all of the evidence, that of the plaintiff's and that of the Commonwealth, give it your full consideration and then bring in a lump sum verdict."

■ In Pennsylvania the jury is not compelled to accept the specific amount of damages which the expert witnesses say followed the taking in an eminent domain proceeding. As we pointed out in *Glider v. Commonwealth, Department of Highways*, 435 Pa. 140, 146, 255 A.2d 542, 545 (1969):

"Unlike the rule followed in some other jurisdictions, the rule in Pennsylvania is that the verdict of a jury in a condemnation proceeding may be below the lowest market value testified to by the condemnor's own valuation expert."

See also *Stine v. Commonwealth, Department of Transportation*, 26 Pa.Cmwlth. 292, 364 A.2d 745 (1976) (jury verdict exceeding estimates of all of the condemnor's and condemnee's valuation experts was proper, at least where the amount of the jury verdict was less than the amount of the damages testified to by the condemnee).

■ Considering the foregoing in conjunction with the testimony of the instant case, and the common phenomenon of widely divergent expert opinions as to value in eminent domain cases, we cannot find any basis for the trial court's conclusion that the jury verdict bore no relation to the testimony presented by the respective experts.

As noted before, the relevant holding in *Mazur v. Commonwealth,* supra, is that a trial court may award a new trial in an eminent domain case solely on the ground the

verdict was inadequate providing specific and valid reasons are given to demonstrate that the verdict was not truly reflective of the actual damages. And while it is true that in dicta in *Mazur* the court indicated that if the jury's verdict bears "no rationally assignable relation to any of the testimony," this may constitute a valid reason for a new trial, we are not persuaded this is such a case. Further, a reading and comparison of the entire record here with that in *Mazur* readily manifests substantial differences.

The fourth and final factor cited by the court to support its ruling of inadequacy was expressed thusly:

"A review of all the testimony presented at the time of trial with the resulting jury verdict indicates clearly that the jury was confused by the wide disparity of opinions by the experts and lost sight of the vast potential of the land in question."

This, in effect, was an attempt by the trial court to usurp the jury's right to make the findings of fact. Moreover, the record fails to sustain this statement by the court.

As not infrequently occurs in eminent domain cases, the various witnesses for the parties had quite divergent views concerning the property in question. After an evidentiary view of the property, the jury heard the testimony of the respective parties' engineering and real estate appraisal experts. Tinicum's real estate appraisal witness testified to damages of $1,564,000.00; PennDOT's to damages of $209,-000.00. Both appraisal witnesses used the market data— comparable sale approach which they clearly explained to the jury. Tinicum's expert used seven comparable sales, and PennDOT's expert presented eight comparable sales. The testimony of the experts for both parties were, of course, subjected to extensive cross-examination.

As we have noted before, the trial court correctly and carefully instructed the jury that they, and not the expert witnesses, were the final arbiters of the value of the land in question. Further, the weight to be given to the expert testimony on valuation and development potential of the land in question was for the jury and not the court.

In determining the facts, the jury has the right to believe all, some of, or none of the experts' testimony. Furthermore, it was the jury's duty to consider all of the facts and circumstances established by the trial evidence before resolving the damage issue. As we stated in *Crumrine v. Washington County Housing Authority*, 376 Pa. 234, 238–239, 101 A.2d 676, 678 (1954):

> "The wide disparity in the figures of the opinion evidence may peculiarly call for the exercise of common sense on the part of the *jury*, but if its judgment is based upon a view and all of the testimony, it will not be disturbed.

> \* \* \* \* \* \*

> "As in *Ray v. Philadelphia*, supra, the learned court below 'took from the jury its exclusive right to determine the credibility of the testimony and the weight and effect [to which] it was entitled.' However good the intentions of the court may have been, it cannot usurp the power of the jury. The verdict bore a reasonable resemblance to damages proved, and it is not the function of the court below, nor of this Court, to substitute its judgment for that of the jury." [Emphasis in original.]

As we more recently reiterated in *Poulos v. Commonwealth*, 438 Pa. 442, 447, 266 A.2d 100, 102 (1970):

> "We have examined the instant record with care, and find the jury's verdict to be well-supported by the evidence, although there might be substantial support for another verdict. See *St. Clair Cemetery Assn. v. Commonwealth*, 390 Pa. 405, 136 A.2d 85 (1957). Under such circumstances, there being no specific allegations of trial error, it was improper for the court to act as a thirteenth juror and in awarding a new trial it abused its discretion."

What we have said above in *Crumrine* and *Poulos* is applicable to the instant case. When the trial court stated that "the jury was confused by the wide disparity of opinions by the experts and lost sight of the vast potential of the land in question," it substituted its own value judgment for that of the jury.

In sum, after a careful study of the record and consideration of the facts and circumstances established therein, we conclude that the reasons given by the trial court in granting a new trial, whether considered separately or together, do not justify its action and that the court was guilty of a manifest abuse of discretion. See *Austin v. Ridge,* 435 Pa. 1, 6, 255 A.2d 123 (1969) (appellate court's duty to view all the evidence in the record); *Springer v. Allegheny County,* 401 Pa. 557, 559–60, 165 A.2d 383 (1960) (our standard of review for reversing grant of new trial). See also *Stoner v. Metropolitan Edison,* 439 Pa. 333, 336, 266 A.2d 718 (1970), and *St. Clair Cemetery Association v. Commonwealth,* 390 Pa. 405, 136 A.2d 85 (1957) (dealing with, respectively, the factors of disparity between board of viewers award and jury verdict, and disparity in values given by expert appraisal witnesses as bases for granting a new trial).

The order of the Commonwealth Court, affirming the order of the trial court is reversed, and the record is remanded to the trial court with directions to reinstate the verdict of the jury and to enter judgment thereon.

PACKEL, J., did not participate in the decision of this case.