393 A.2d 1057

## In re CUSTODY OF John Robert NEAL, a minor.

### Appeal of John K. NEAL.

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Decided Nov. 8, 1978.

Samuel S. Pangburn, Washington, and John V. Adams, Jr., Pittsburgh, for appellant.

Wray G. Zelt, III, Washington, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

In this custody dispute, the father appeals from an Order awarding a three-year old child to the mother. Since we find the record complete and the lower court has filed a comprehensive Opinion discussing the evidence and the basis of its decision, we will affirm.

We note initially that appellate review of child custody cases is of the broadest type. *Commonwealth ex*

*rel. Holschuh v. Holland-Moritz,* 448 Pa. 437, 292 A.2d 380 (1972); *Tobias v. Tobias,* 248 Pa.Super. 168, 374 A.2d 1372 (1977). While we will not nullify the fact finding function of the hearing judge, we are not bound by deductions or inferences which have no competent evidence to support them. *Tomlinson v. Tomlinson,* 248 Pa.Super. 196, 374 A.2d 1386 (1977); *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 312 A.2d 58 (1973). To facilitate this broad review, we require the hearing court to provide us with a "full and complete explanation of the reasons underlying his decision, which reasons should be set forth in a complete, comprehensive Opinion." *Commonwealth ex rel. Fox v. Fox,* 216 Pa.Super. 11, 260 A.2d 470 (1969); *Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976). Additionally, the record must be complete, including if possible, disinterested testimony bearing on the present capabilities of the parties to provide the child with a stable atmosphere. *Augustine v. Augustine,* 228 Pa.Super. 312, 324 A.2d 477 (1974). Where the hearing judge fully complies with these requirements, his decision will not be reversed, absent an abuse of discretion. *Tobias,* supra; *Carlisle Appeal,* 225 Pa.Super. 181, 310 A.2d 280 (1973). Finally, we are guided by the long standing principle that the paramount concern in a child custody dispute is the best interest and permanent welfare of the child. Act of June 26, 1895, P.L. 316, § 2, 48 P.S. § 92; *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A.2d 625 (1972).

The parties were married on February 15, 1975 and resided in Washington, Pennsylvania. Appellee Kathy Neal gave birth to John Robert Neal on September 26th that same year. This is the only child of the marriage and is the subject of the present controversy.[1] Sometime during the summer of 1976, Kathy Neal suffered a mild stroke and, although she had completely recovered at the time of the custody hearing, it appears the marriage was never the same afterwards. Kathy sought outside employment and was

---

1. Since both father and son have the same first name, we will, for convenience, refer to the father as John Sr. and to the son as John Jr.

away from home much of the time, to her husband's discontent. She began meeting friends several nights during the week at a local restaurant in addition to her part-time job as a receptionist, all of which her husband objected to. Conditions worsened between the two until Christmas Day, 1976, when a shouting match prompted Kathy to announce her intentions of obtaining a divorce. The parties separated in March, 1977 and, that same month, an agreement, drafted by John Sr.'s counsel, was signed by both parents, granting "complete and permanent custody" of John Jr. to John Sr. and awarding "unlimited visitation rights" to Kathy. Kathy did not seek counsel before signing the agreement and testified she felt pressured into signing it. On June 30, 1977, Kathy filed the instant petition for custody.

At the time of the hearings the parents were divorced, a decree having been entered July 11, 1977. John Sr. had taken the child to live with him in Mt. Lebanon at the home of his parents. He is employed as an X-ray technician at Washington Hospital and works Tuesday through Saturday, 7:00 A.M. to 3:00 P.M. These hours require him to leave home at 5:30 A.M. and return at 4:30 P.M. In addition, he is on call with a Washington ambulance service 6:00 A.M. to 6:00 P.M. on Sundays. Monday is his day off. When he is home, he provides full care for John Jr., accepting responsibility for all phases of the child's well being. While John Sr. is away from home, the paternal grandmother cares for the child. She testified she is willing to undertake that task and in fact appellee's counsel stipulated the grandmother could provide an adequate home for the child.

Kathy Neal lives by herself in a Washington, Pennsylvania apartment and is employed as a physician's secretary and lab technician. Her hours are 9:00 A.M. to 5:00 P.M., Monday through Friday. Visitation arrangements at the time of the custody hearings allowed her to keep John Jr. with her Friday evening to Sunday evening. Her plans were to hire a babysitter, one Midge Lyle, to be with John Jr. while Kathy worked. Since her place of employment is so close to her apartment, Kathy need not leave home until

8:50 A.M., allowing her to attend to the child when he rises and eats breakfast, and she is home in the afternoon by 5:10 P.M. allowing her to see to the child's supper and bedtime. In addition, she is able to go home for lunch to again be with John Jr.

The lower court found, and we agree, that both Kathy and John Neal are good parents; both love the child and can provide accommodations suitable for him. Both have adequate incomes and supportive parents who are willing to assist when necessary. The court found the deciding factor in awarding the child to Kathy to be her expanded availability to John Jr. over the father's. Kathy Neal's proximity to her job frees her to be with the boy at the important times of his day: at breakfast when he rises, at his lunch, and naptime, and at supper and bedtime. The father's work schedule, on the other hand, requires him to leave home before John Jr. wakens and to return long after lunch and naptime. In reaching its decision, the court gave little weight to the one page custody agreement of March, 1977, mindful of:

> the circumstances of the drafting and signing of the agreement, the domestic climate at that time, the desire of the wife to get out of the marriage, the apparent strong personality and temperment of the husband, and the fact that Kathy was represented by counsel whose review of the document she was asked to sign was not sought. We therefore give little weight to the agreement and consider it voidable.

Opinion at 4.

The court expressly disclaimed any reliance on the tender years doctrine, now abolished by a plurality of the Supreme Court in *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977). Generous visitation privileges were granted John Sr.: Sunday evening to Monday evening, and at other times "mutually convenient to both mother and father."

Our independent review of the record[2] and careful reading of the court's thoughtful and considered Opinion persuades us the court's findings are amply supported by the evidence and that its decision was adequately explained. The custody agreement of March, 1977 was properly voidable. As this Court stated in *Commonwealth ex rel. Veihdeffer v. Veihdeffer,* 235 Pa.Super. 447, 344 A.2d 613 (1975): "It is well settled that an agreement between the parties as to custody is not controlling but should be given weight taking into consideration all the circumstances . . . [T]he court below is not bound by a contractual agreement pertaining to the custody of children. *Commonwealth ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 66 A.2d 300 (1949)" id., 235 Pa.Super. at 448–9, 344 A.2d at 614.

Where the scales are equally balanced between two competent and willing parents, the deciding factor could be the expanded availability of one parent to the child over the other.[3] We are likewise impressed with the qualifications of the surrogate mother, Mrs. Lyle, who will care for John Jr. while Kathy must work.[4] Moreover, we are not persuaded, as appellant urges, that Kathy Neal's present romantic interests will hinder the child's moral, spiritual, or emotional well-being.[5] Additionally, Kathy's apartment is not too con-

2. Testimony required three days of hearings and the transcripts before us fill 237 pages.

3. In *Davidyan v. Davidyan,* 230 Pa.Super. 599, 327 A.2d 145 (1974), we were also faced with "a choice between exceptionally fine parents." There, we found the tender years doctrine the deciding factor in awarding custody to the mother.

4. Numerous witnesses attested to Mrs. Lyle's capabilities in child rearing. Karen Logsden, whose own children Mrs. Lyle watched for two years, declared she was "very, very dependable". July 19, 1977 Trans. p. 48. Kathy's mother was also satisfied Mrs. Lyle was fully capable of assuming responsibility for John Jr. id. at p. 70. Kathy herself found Mrs. Lyle "very reliable . . . very dependable, competent woman." id. at p. 6.

5. There was testimony on both sides accusing the other of amorous involvements which could potentially harm the child. The court found, "[T]here has been no showing of any adverse effect their romantic alliance with others had on the child or on the discharge of their parental duties." We see nothing in the record to upset that finding.

fining for a growing boy. She has two bedrooms, living room, dining room, kitchen and bath.

When a hearing judge has been careful and thorough and has properly applied the law, we must defer to his conclusions. *Tobias v. Tobias,* supra, 248 Pa. at 175, 374 A.2d at 1375 (1977). On this record, we are satisfied the court's adjudication provides for the child's best interests, "which includes [his] physical, intellectual, moral and spiritual" development. *Commonwealth ex rel. Holschuh v. Holland-Moritz,* supra, 448 Pa. at 444, 292 A.2d at 383; *Davidyan v. Davidyan,* supra. Mindful of the court's duty to be vigilant of the child's "permanent welfare", 48 P.S. § 92, we note this proceeding may be reopened should a significant change in the circumstances of either party occur.

Affirmed.

JACOBS, President Judge, concurs in the result.

HOFFMAN, J., did not participate in the consideration or decision of this case.