417 A.2d 233

**COMMONWEALTH of Pennsylvania ex rel. Charles HUSACK**

v.

**Jean B. HUSACK.**

**Appeal of Charles HUSACK.**

Superior Court of Pennsylvania.

Argued March 20, 1979.

Filed Dec. 21, 1979.

Jeffrey R. Dimmich, Allentown, for appellant.

Michael L. Ozalas, Jim Thorpe, for appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

PRICE, Judge:

This appeal is from the order of the court of common pleas granting custody of two minor boys, Chris, age 14, and Howard, age 16, to their stepmother, appellee. Appellant,

the natural father of the two children contends that the lower court order was error. We disagree and affirm the order of the court of common pleas.

The pertinent facts are as follows. Appellant, his sons, and the boys' natural mother all lived together until the mother died in July of 1972.[1] Appellant subsequently met appellee and married her in August 1973. The boys "graciously" accepted her into the family (N.T. 8a), and grew to regard her as a natural mother rather than a stepmother (N.T. 101a). Domestic discord between appellant and appellee developed early in the marriage, and the couple separated numerous times, with the final separation occurring in August of 1977. At that time, appellee left appellant's house and moved into a trailer park. She took the two boys along with her, after they had expressed a desire to live with her rather than with their father.[2] Since this move, appellee has been supporting the children alone,[3] despite an outstanding court order, which appellant has ignored, compelling him to furnish support for the children (N.T. 35a). At the custody hearing, both boys expressed a strong preference to remain in the custody of appellee.

In its opinion supporting the order awarding custody of the boys to appellee, the trial court found that the children had been closer to and had received greater care, affection and sustenance, both physical and psychological, from appellee, and it concluded that the best interests of the boys would be served by awarding their custody to her.

Appellant contends that under the standard established by this court in the case of *In re Custody of Hernandez,* 249

---

1. Appellant also had a third son, Jeffrey, older than Howard and Chris, who lived with appellant during this time, but he is not the subject of the lower court order nor this appeal.

2. During the several separations which occurred prior to August 1977, appellee did not take the boys. Appellee testified that during the last two separations prior to this time, the boys contacted her by phone and begged her to take them away from appellant's house. (N.T. 46a–47a).

3. The children also were receiving social security benefits. (N.T. 36a).

Pa.Super. 274, 376 A.2d 648 (1977), he, as the natural father of the children in a custody dispute with a third party, *i.e.* the children's stepmother, has a prima facie right to custody which can be overcome only by the establishment of convincing reasons that the best interests of the children would be served by awarding their custody to her. The order of the trial court, appellant asserts, was in error because the testimony presented established no such convincing reasons. Without determining whether appellee properly fits within the meaning of a third party,[4] we hold that the evidence adduced at trial established convincing reasons that the best interests of the children would be served by awarding their custody to appellee.

The scope of review of an appellate court is very broad in custody cases. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977); *Jones v. Kniess*, 249 Pa.Super. 134, 375 A.2d 795 (1977); *Cheppa v. Cheppa*, 246 Pa.Super. 149, 369 A.2d 854 (1977). However, this power is not without its limitations. We will not nullify or usurp the fact-finding function of the lower court. The credibility of the witnesses and weight to be given their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear. *Commonwealth ex rel. Spriggs v. Carson, supra; Commonwealth ex rel. Harry v. Eastridge*, 374 Pa. 172, 97 A.2d 350 (1953); *Jones v. Kniess, supra.*

"[The hearing judge] alone had the opportunity to see and hear the witnesses in this case, and therefore had the better opportunity to pass upon their demeanor and character. These are qualities which cannot be divined from the mechanistic reading of a cold record. It is these

4. It appears that the trial court did not apply third party status to appellee.

"THE COURT" I am aware of the relationship among the parties, and you will forgive me if I refer to them as parents. They certainly occupied a position of parents for several reasons, whether they were biological or not, and it may be that in the last analysis biological aspects may have something to do with the decision but, again, she's more than just a third party but I am still concerned about the best interests of the children." (N.T. 13a).

factors which must therefore be accorded great weight by a reviewing court." *Commonwealth ex rel. Spriggs v. Carson, supra,* 470 Pa. at 298, 368 A.2d at 639.

Because the trial judge is in the better position to evaluate the attitudes, sincerity and demeanor of the witnesses, we have held that absent a gross abuse of discretion, an appellate court should not interfere with his decision. *Jones v. Kniess, supra.*

The primary consideration in any child custody proceeding is to determine the best interests of the children. "Best interests" not only include the children's physical well being, but also their intellectual, spiritual, and moral well being. *Commonwealth ex rel. Cutler v. Cutler,* 246 Pa.Super. 82, 369 A.2d 821 (1977); *Commonwealth ex rel. Pruss v. Pruss,* 236 Pa.Super. 247, 344 A.2d 509 (1975). In determining the best interests of the children, their preference, although not controlling, is a factor to be considered as long as it is based on good reasons. *Shoup v. Shoup,* 257 Pa.Super. 263, 390 A.2d 814 (1978); *Tobias v. Tobias,* 248 Pa.Super. 168, 374 A.2d 1372 (1977). In assessing the weight to be accorded the child's preference, his maturity and intelligence are to be considered, with increased weight being accorded the preference as the child grows older. *Shoup v. Shoup, supra; Tomlinson v. Tomlinson,* 248 Pa.Super. 196, 374 A.2d 1386 (1977).

The testimony adduced at the custody hearing indicated that appellant had practically no contact with the children during the ten months between their move out of his house and the time of the hearing, nor did he ever initiate any contact. He refused to support them while they were out of his household despite a court order requiring such. Moreover, both boys expressed a strong preference to remain with appellant and gave several reasons to support this preference. Howard, age sixteen, stated that while appellee gave them love and took the time to talk with them about their problems, appellant treated them "like dirt" and was always too busy to attend to their needs. (N.T. 101a). Chris, age fourteen, echoed these sentiments and added that

he was in fear of his father, particularly in light of the physical abuse his father inflicted upon the boys' natural mother during her lifetime (he would "throw her around" and even broke her glasses on one occasion).[5] (N.T. 119a). Both boys stated that they enjoyed more peace of mind with their stepmother and that the less spacious quarters which she provided were much preferred to the "jail"-like atmosphere presented by what can be characterized as their father's overly-authoritarian nature and lack of concern (N.T. 114a).

Although the trial judge's memorandum opinion is borderline in its enunciation and application of the standards of proof for custody cases as set forth by this court in *Hernandez*, we hold that the instant case presents a situation where the record is sufficiently complete and clear, without benefit of further explanation, to enable us to judge where the merits lie.[6] *See Hooks v. Ellerbe*, 257 Pa.Super. 219, 390 A.2d 791 (1978); *In re Custody of Hernandez, supra; Tomlinson v. Tomlinson, supra.* The record clearly demonstrates convincing reasons for awarding custody to appellee: appellant showed no concern for the children during their absence and refused to support them; the boys, both teenagers, had a strong preference to remain with their stepmother; and they feared the father, characterizing him as too authoritarian, capable of inflicting severe physical punishment, and

5. Appellee also testified to having been threatened and struck by appellant (N.T. 49a).

6. In addition to the fact that we hold the record to evidence convincing reasons warranting the award of the boys' custody to appellee, we discern another reason that would make remand inadvisable. The hearing judge, the Honorable Donald E. Wieand, no longer sits on the court of common pleas. In the case of *Tomlinson v. Tomlinson, supra,* a somewhat similar situation was presented (the hearing judge retired) and we held that a remand would be inappropriate.
"To remand now, therefore, would mean not a remand for completion of the record or for a fuller opinion, but to start the proceedings all over again. Hearings would have to be held again, and once more the girls, and their parents, would be forced to come to court and litigate their differences. To put the children through such proceedings, unnecessarily, would not serve their best interests." *Tomlinson v. Tomlinson, supra,* 248 Pa.Super. at 204, 374 A.2d at 1390.

unconcerned about their needs. On the other hand, they testified that they felt loved by their stepmother who showed concern about their problems. This evidence, *in toto*, leads us to the conclusion that convincing reasons were presented to support the lower court's order granting custody to appellee.

Accordingly, we affirm the order of the court of common pleas.

SPAETH, J., concurs in the result.