426 A.2d 555

**COMMONWEALTH of Pennsylvania, ex rel. Carol Anne PIERCE, by her mother, Elizabeth C. Grube, Appellee**

v.

**John M. PIERCE, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1980.

Decided Feb. 4, 1981.

Reargument and Clarification of Order Denied March 24, 1981.

Edward D. Foy, Jr., Richboro, for appellant.

Robert M. Hammond, Warrington, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

KAUFFMAN, Justice.

John M. Pierce ("father") appeals from an order of the Superior Court affirming a child custody award entered by the Court of Common Pleas of Bucks County in favor of his former wife, Elizabeth C. Grube ("mother").[1] For the reasons that follow, we reverse and remand for entry of a custody order consistent with this opinion.

Father and mother were separated in July 1975 and divorced in June 1976. Carol Anne ("Carol"), born November 19, 1965, is the only child of the marriage. At the time of separation, mother withdrew from the family home in Telford, Bucks County, Pennsylvania, and left Carol in the care of her maternal grandmother at her shore home. Shortly thereafter, father brought Carol back to Telford, and mother acquiesced in Carol's express wish to remain with father, which she continued to do until the custody hearing on August 8, 1978. Following the hearing, custody was awarded to mother, and on February 22, 1980, the Superior Court affirmed the award.

Although the testimony of both parties clearly establishes that father made no effort to restrict or deter mother's access to Carol, she visited her infrequently during the three years from separation to custody hearing, and never had her stay overnight. In fact, mother conceded that there was an "extended period of time" when she did not see Carol at all.[2]

1. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. § 724(a).

2. Although mother suggests that except for this period she saw Carol "maybe once a month" (R. 9), Carol says she saw her mother

Although mother worked, she contributed nothing to Carol's support.

In December 1976, mother married Kent Grube, father's former brother-in-law. However, it was not until June 1978, after she learned that father was planning to move with Carol to California, that mother for the first time sought custody.

At the time of the hearing, father was a vice-president of Hartman Trailer Manufacturing Company, a family-owned business, and lived in Orange, California with Carol and his fiancee, Sandra Toth, whom he planned to marry in September 1978. The record shows that Sandra and Carol "get along beautifully" and that Carol was very happy about the impending marriage.

The clear picture of Carol that emerges from the hearing record is that of a happy, well-adjusted, bright twelve and one half year old. By the time of the hearing, she had completed seventh grade and was on the honor roll. During the period from the separation to the hearing, Carol repeatedly expressed her preference to remain with father and was very excited about the move to California.[3]

Our paramount concern in custody cases is the best interest and permanent welfare of the child. *Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 421 A.2d 157 (1980); *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587 (1976); *Commonwealth ex rel. Bendrick v. White*, 403 Pa. 55, 169 A.2d 69 (1961); *In re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978). Father argues that in determining Carol's best interest, both the trial court and

"[m]ostly around holidays and stuff, around birthdays and different holidays." (R. 1250).

**3.** Mother last saw Carol before the August 7, 1978 custody hearing on June 24, 1978 at which time Carol repeated her desire to stay with father. At the hearing, Carol confirmed her wish to continue living with father and his fiancee, and stated that she would feel uncomfortable if she were to move in with her mother.

the Superior Court, which adopted the reasoning of the trial court *verbatim*, failed to give proper weight to mother's indifference to Carol, as manifested by her infrequent contact; to the stable existing relationship Carol had with father which had produced a well educated, happy child; and to Carol's repeatedly expressed preference to continue to live with him. Father further contends that the lower court gave too much weight to the fact that Carol would be living in California if he were awarded custody.[4]

■ Our scope of review in a custody matter is of the broadest type, and we are not bound by deductions or inferences made by a trial court. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 295, 368 A.2d 635, 637 (1977). We must exercise an independent judgment based on the evidence and make such an order on the merits of the case as right and justice dictate. *Adoption of Farabelli*, 460 Pa. 423, 433, 333 A.2d 846, 851 (1975); *Snellgrose Adoption Case*, 432 Pa. 158, 163, 247 A.2d 596, 599 (1968). Mindful of our obligation to broadly review the lower court's determination, we turn to an examination of the facts and the reasoning which it found persuasive in reaching its decision to award custody to mother.

The trial court excused mother's infrequent visits with Carol during the three years she lived with father and her delay in seeking custody because mother stated that she and Carol needed time to adjust to the separation and because she allegedly feared father. At the time of the hearing, mother had lived in the house owned by her present husband, Kent Grube, for two and a half years, and had been married to him for a year and a half. These facts undercut mother's excuse for manifesting precious little concern for Carol's welfare for three years after she had abandoned

4. Father also asserts that he was denied custody because he exercised his fundamental right of federal citizenship to establish residence in another state, which, he claims, constitutes a denial of substantive due process. In view of our disposition of this case on other grounds, we need not reach the constitutional issue.

family and home for a relationship with father's brother-in-law:

I wanted her to feel that the world wasn't coming to an end and that she would stay in familiar surroundings until I could get set up enough with a home for her and at that point I didn't have a home set up for her, I left everything in Telford and when I got a home set up for her I wanted her to come live with me.

The record reveals that mother admitted that she did not see Carol as often as she should and that she never tried to establish a regular schedule of visitation. At the same time, she agreed that father had never tried to limit or deter her visits with Carol, and had freely acquiesced in Carol's frequent visits with mother's parents.

The court also excused mother's infrequent visits because of her expressed fear of father, allegedly based on one incident that occurred prior to the separation. Father, upset over the state of his marriage and having discovered one evening that his wife was not where she said she would be, pointed a gun at her and made her drive him to where she had been earlier in the evening, apparently with her future husband, father's brother-in-law. Father testified that he did not know if the gun was loaded, and that after he realized what he had done, he immediately returned it to his father, from who he had borrowed it. The record reveals no other violent incidents between the two and no evidence that mother was ever obstructed in her visits with Carol, or that Carol's visits with other relatives were ever discouraged. The fact that mother did visit Carol without incident—albeit sporadically—during the three years refutes her alleged fear of father as a valid reason for her limited contact with and interest in Carol.

■  Without reference to any record evidence, the trial court concluded that sole custody should not be awarded to father because his demeanor at the hearing indicated that he "was capable of impulsive and somewhat irrational behav-

ior." Although we are constrained to give weight to the trial court's findings, *Trefsgar v. Trefsgar*, 261 Pa.Super. 1, 395 A.2d 273 (1978), we note that the only impulsive behavior revealed in the record was the isolated gun incident which arose out of father's distress in discovering mother's relationship with his brother-in-law. This incident was in no way related to Carol and none of the witnesses suggested that his behavior toward her had ever been impulsive or irrational. To the contrary, all evidence inexorably pointed to the conclusion that Carol had flourished while happily living with father and had repeatedly expressed her preference to remain with him. Unless it can be shown that a parent's conduct has had harmful effects on a child, it should have little weight in making a custody decision. *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587 (1976).

While noting that both the mother and father had adequate accommodations to offer the child and that placement with either parent would require her adjustment to a new setting, the court gave considerable weight to mother's stable marriage and to the fact that her husband got along well with Carol. However, the record also discloses that father had a permanent relationship with the woman he planned to marry and with whom, as the record clearly reveals, Carol enjoyed a loving and happy relationship. Without a scintilla of supporting evidence and in total disregard of the fact that Carol was obviously happy and thriving during the time father's fiancee had been living in the home, the trial court arbitrarily concluded that it was "[q]uite frankly . . . not impressed with Mrs. Toth's future capabilities to be a surrogate mother." We obviously are not bound by impressions unrelated to fact.

The trial court found that father's move to California weighed heavily in favor of awarding custody to mother, because the child's family ties, particularly with her grandparents, would be "limited severely." Such a conclusion

gives undue weight to Carol's relationship with her grandparents, while ignoring the much more important relationship with the parent with whom she had lived and thrived for the three years following the separation. The record abundantly confirms the uninterrupted loving care and devotion of father for his daughter, reflected not only by words, but by the undisputed fact that Carol was a contented, well-adjusted twelve and one half year old who repeatedly asked to remain where she had been happy. In contrast, the only evidence we have of mother's care and concern for Carol is the history of past neglect and the emptiness of future promises. Under these circumstances, to deny Carol the permanent stability of father's daily love and affection in the home she expressly prefers would be a gross injustice and clearly not in her best interest.

In custody matters, removal to another jurisdiction is not controlling. *Commonwealth ex rel. Spriggs v. Carson, supra; Commonwealth ex rel. Parikh v. Parikh*, 219 Pa.Super. 240, 280 A.2d 621 (1971), *rev'd other grounds*, 449 Pa. 105, 296 A.2d 625 (1972); *Commonwealth ex rel. Ackerman v. Ackerman*, 204 Pa.Super. 403, 205 A.2d 49 (1964) (allocatur denied). This is especially true when the child's relationship with the parent without custody will not be unduly limited. The record establishes that father had proposed that Carol visit her relatives in Pennsylvania for a large part of each summer and during the Christmas holidays. In light of the fact that Carol usually visited mother and relatives, other than her grandparents, only on special occasions and holidays, the suggested visitation schedule would not dramatically change the *status quo* as of the time of hearing.

Although the express wishes of the child are not controlling in custody decisions, they do constitute an important factor which must be carefully considered in determining the child's best interest. The weight to be accorded the child's preference varies with the age, maturity and intelligence of the child and the reasons given for the preference.

*Albright v. Commonwealth ex rel. Fetters, supra; Commonwealth ex rel. Holschuh v. Holland-Moritz,* 448 Pa. 437, 292 A.2d 380 (1972); *Cochran Appeal,* 394 Pa. 162, 145 A.2d 857 (1958); *Commonwealth ex rel. Bankert v. Children's Services,* 224 Pa.Super. 556, 307 A.2d 411 (1973); *Janflone v. Janflone,* 219 Pa.Super. 194, 280 A.2d 423 (1971). Carol was twelve and one half years of age at the time of the hearing and was a happy, well adjusted, honor roll student thriving in father's custody. Accordingly, her unvarying preference to remain with father must be given great weight in any determination of what will be in her best interest.[5]

The trial court concedes that it "would normally be inclined to give considerable weight to this child's preference in light of her age." However, her testimony was discounted for two reasons. First, the trial court inferred that Carol's preference was influenced by the exciting prospect of moving to California. This conclusion totally disregards the fact that her preference to remain with father was expressed long before the move to California was contemplated. Second, the trial court discounted her preference because Carol had been more frequently exposed to father's views of mother and the failed marriage. We note that mother deliberately chose a routine of sporadic visits. Furthermore, father persuasively testified that he took great care not to prejudice mother in Carol's eyes. On cross-examination he was asked if he had ever discussed with Carol the anger and disappointment he felt following the separation:

5. When asked why she did not want to live with her mother, Carol responded, "Sometimes she feels cold ... I wouldn't feel right living with her." (R. 129). Although counsel for mother tried to establish that this feeling of coldness was simply the result of the two not having seen each other very often, Carol's response, which was cut off by mother's counsel, suggests something deeper:

Q: I guess this coldness, I guess you mentioned that's an occasional sort of thing, could it have been simply from the fact that you haven't seen her as often as you would have liked to have seen her?

A: I don't know, she seemed that way, I don't know, as long as I have—

Q: Did you discuss some of this with Carol?

A: That was one thing that was very hard to keep myself from doing and I pointed out to Carol that the difficulties that we were having did not concern her as far as either one of our loves for her, it was not my point or place, nor could I gain anything by trying to pump Carol up with information that would be untrue, there is no point to this; does that answer your question?

Q: Well maybe. A minute or two ago you said it was very important to you that you keep this member of your family?

A: That's right, but at the risk of belittling her mother, no.

(R. 790.) We conclude that the trial court accorded insufficient consideration under the circumstances of this case to Carol's continuously expressed desire to remain with father.

■ For three years after mother abandoned the family home, father provided Carol with a happy, loving environment in which she obviously flourished; all agree, including mother, that he is a good father. In awarding custody to a mother who made no attempt in three years either to establish frequent, regular visits with her daughter or to gain custody, the trial court overemphasized the relationship Carol enjoyed with her grandparents and other relatives in Pennsylvania and grossly undervalued father's performance from the time of separation and Carol's preference to remain with him. Custody therefore must be restored to father, with mother having visitation rights.

Accordingly, we reverse the order of the Superior Court and remand to the Court of Common Pleas of Bucks County for proceedings consistent with this opinion.

ROBERTS, J., concurs in the result.