432 A.2d 1066

COMMONWEALTH ex rel. Howard A. BERMAN

v.

Barbara A. BERMAN, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed July 24, 1981.

Abraham J. Brem-Levy, Philadelphia, for appellant.

Howard Berman, Wilkes-Barre, for appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This is a child custody case. We are all in agreement that the order of the lower court should be affirmed. Our only point of difference is regarding the standard of review that we should apply.

Judge HESTER says in his opinion that when the lower court has made a "penetrating and comprehensive inquiry into the facts," and has filed "a comprehensive opinion containing its findings and conclusions," its "decision will not be reversed absent an abuse of discretion." At 1068. Judge CAVANAUGH and I believe that statement to be too broad.[1]

■ If the issue is whether we should reverse the lower court's findings of fact, then indeed we must defer to the lower court, and reverse only where in making the findings the lower court has abused its discretion. This is so because the lower court saw the witnesses and is therefore much more able to appraise their credibility than we. *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977). However, "we are not bound by [the lower court's] inferences or deductions ... from the facts found." *In re Custody of Hernandez, supra*, 249 Pa.Super. at 290, 376 A.2d at 656. Instead, "[w]e must exercise an *independent judgment* based on the evidence and make such an order on the merits of the case as right and justice dictate." *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 296, 426 A.2d 555, 557 (1981) (emphasis added); *Scarlett v. Scarlett*, 257 Pa.Super. 468, 390 A.2d 1331 (1978). This is so because the scope of our review "in a child custody case is of the broadest type." *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977); *Sipe v. Shaffer*, 263 Pa.Super. 27, 396 A.2d 1359 (1978); *In re Custody of Myers*, 242 Pa.Super. 225, 363 A.2d 1242 (1976).

■ An "abuse of discretion" occurs when the lower court's "judgment ... is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ...." *Mielcuszny v. Rosol*, 317 Pa. 91, 93–94, 176 A. 236, 237 (1934). If we were bound to defer, not only to the lower court's findings of fact but also its conclusions of law, except in a

1. *And see* Judge HOFFMAN's concurring opinions in *In re: Jennifer Lynn Arnold*, 286 Pa.Super. 171, 176, 428 A.2d 627, 629 (1981) (J. 47/81), and *Commonwealth ex rel. E.H.T. v. R.E.T., Sr.*, 285 Pa.Super. 444, 458, 427 A.2d 1370, 1376 (1981) (J. 1906/79).

case of "abuse of discretion," we should be unable to make the independent judgment we must make in child custody cases. Instead of being "of the broadest type," our scope of review would be very narrow.

It is true that some of the cases support the formulation in Judge HESTER's opinion. *See, e. g., In re Custody of Neal,* 260 Pa.Super. 151, 393 A.2d 1057 (1978) (in which I joined). It is nevertheless an inaccurate formulation, and we ought not to repeat it.

Of course, whenever we make an independent judgment, we take into careful account what the lower court has said. Certainly we will be influenced, and will often be persuaded, by the lower court's conclusion as to what is in the child's best interest. Child custody cases are extraordinarily difficult, and we have no special wisdom that enables us to know better than any one else what order "right and justice dictate." *Commonwealth ex rel. Pierce v. Pierce, supra.* We must therefore draw on the wisdom of the lower court. In the end, however, the decision must be ours; that is what review "of the broadest type" means. *Commonwealth ex rel. Spriggs v. Carson, supra.* We cannot—should not— avoid or diminish our responsibility by saying that we will reverse only for "abuse of discretion." In some cases, such as cases involving an order opening a judgment, or granting a new trial, or determining that a given weekly sum is fair support, such deference is appropriate. In child custody cases, it is not.

■ This much said, Judge CAVANAUGH and I join Judge HESTER's statement of the case, which we cannot improve upon; it properly defers to the lower court's appraisal of the witnesses, and then, taking the facts as found by the lower court, proceeds to consider the lower court's conclusion that it is in Danny's best interest to be with his father, even though it means that he and his sister will be separated. Judge HESTER does not say whether it is his independent judgment that the lower court's conclusion was correct; he would affirm the lower court's order because he finds no "abuse of discretion." Judge CAVANAUGH and I

affirm because, on the basis of the evidence, it is our independent judgment that the lower court's order is in Danny's best interest. While here it does not matter which standard of review is applied, in another case it may. It is therefore important that we be clear what we are doing.

AFFIRMED.

HESTER, J., files a concurring opinion.

HESTER, Judge, concurring:

In this child custody proceeding, the lower court awarded 13 year-old Melissa Berman to her mother and seven year-old Danny to his father. Only the mother has appealed and hence only the custody of Danny Berman is before this Court. Testimony was taken by the court below during four days in August, 1979 and consumes over 500 pages. The court filed a lengthy (36) pages and comprehensive opinion in support of its decision and we will defer largely to that opinion in now affirming.

The parties, Howard and Barbara Berman, were married on September 7, 1958 and had four children: David, 18, Sheri, 17, Melissa, and Danny. The Bermans resided together for some 19 years until August, 1977 when Mrs. Berman removed herself from the marital abode in Kingston, Luzerne County, and moved in with a friend, one Janet Roer, while the children stayed with Mr. Berman. This arrangement continued until January 16, 1978 when Mrs. Berman began occupying an apartment of her own in Kingston and took Melissa and Danny with her, while David and Sheri remained with their father. The instant habeas corpus action was later instituted by Mr. Berman, seeking custody of Melissa and Danny, and was apparently prompted by the imminent removal of the two children by Mrs. Berman to Atlanta, Georgia, where she was seeking employment. A restraining order issued and was served upon Mrs. Berman prohibiting removal of the children from the jurisdiction without further order of court. The court's final decision bearing on the custody of Melissa and Danny was handed down on the day following the conclusion of testimony.

As we have said, we affirm largely on the lengthy opinion of Judge Toole. The court exhaustively analyzed the voluminous record and considered in painstaking detail each of appellant's many contentions bearing on credibility of witnesses, particularly the expert witnesses; the weight of sufficiency of the evidence; relative fitness of the parents and living arrangements offered by each; the fitness of the surrogate parents; preferences of the children, and past misconduct by the parents. Further, the court discussed in some detail the many supporting witnesses offered by both sides regarding the fitness of each parent. Finally, the court laid particular emphasis on the best interests of the children, which is the paramount concern in any custody proceeding, and which embraces the child's "physical, emotional, intellectual, moral, and spiritual well-being." *Ellerbe v. Hooks*, 490 Pa. 363, 371, 416 A.2d 512, 517 (1980) (Flaherty, J. concurring). In short, the lower court has made a "penetrating and comprehensive inquiry into the facts" and has filed "a comprehensive opinion containing its findings and conclusions." *Lewis v. Lewis*, 267 Pa.Super. 235, 240, 406 A.2d 781, 784 (1979). When the hearing judge complies with these requirements, his decision will not be reversed absent an abuse of discretion. *Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978).

Appellant's principle contention on appeal is that the court abused its discretion in crediting the testimony of two of appellee's expert witnesses over appellant's own expert. The record reveals that, beginning with his parents' separation, Danny Berman began to undergo a series of personality changes and became withdrawn, tense, and irritable whereas he was formerly an outgoing, exuberant, and friendly little boy. In addition, Danny developed what was later diagnosed as encopresis, which is an involuntary soiling or discharge of feces having no organic basis.

In an attempt to seek professional guidance, Mrs. Berman made inquiries at the Childrens Service Center in Luzerne County, where psychological testing and family counseling were offered. There, Danny was examined and tested by

Carter Nelson, a child psychologist, who is a doctoral candidate in his field. Mr. Nelson had previously spent 2½ years in the Army as an adolescent psychologist and then served a year internship at the Childrens Service Center before joining the staff as a psychologist. In the present case, Mr. Nelson administered a battery of tests to Danny in an effort to discover the source and possible remedies for his problem. The testing included intellectual and functional screening, developmental and achievement tests as well as emotional evaluation. This testing and weekly counseling and therapy began in April, 1979 and continued up until the time of the hearings below. Based upon his extensive testing of Danny and his close relationship with the child, Mr. Nelson concluded that Danny was very angry and hostile as a result of his environment and broken home and that he is in vital need of his support systems in the Wilkes-Barre area—his siblings, friends, grandparents, relatives, and Nelson himself. Nelson's goal was "to give [Danny] as much security and as much consistency as possible and any uprooting will lead to deeper feelings of insecurity." N.T. 48. He was also of the opinion that Mrs. Berman's anger and hostility toward her estranged husband had impaired her ability to deal effectively with Danny's emotional needs and to understand them. Thus, in view of Mrs. Berman's impending move to Atlanta, Nelson stated that Danny's best interests would lie in remaining with his father.

Also testifying from the Childrens Service Center was Judy Skula, a psychiatric case worker and an employee of the Center for 9½ years. Miss Skula holds a B.A. degree in science and would enter the masters program that Fall. She had also had a continuing relationship with Danny in the months preceding the custody hearing and agreed in all essentials with Nelson's observations that Danny should not be uprooted to Atlanta, but rather ought to stay with his father. Miss Skula further agreed that Mrs. Berman's anger toward her husband had had negative effects upon Danny's well-being.

As her own expert, Mrs. Berman offered Martha J. Whelly, a clinical psychologist with the Wyoming Valley Counseling and Learning Associates in Kingston, near Wilkes-Barre. Mrs. Whelly is a doctoral candidate at the University of Pennsylvania and has been a clinical psychologist for 18 years, having held college teaching posts and positions with other child guidance centers. She has also written and had published several works concerning mental health and the law, child development, juvenile offenders, and has lectured on the subject of children in divorce. Mrs. Whelly did not personally become involved with Danny and the Bermans until August 24, 1979, in the midst of the custody hearings. At the request of Mrs. Berman, she administered a mental status evaluation of Danny in order to assess his orientation, intellectual functioning, and thought processes. Following a two-hour session with Danny, Mrs. Whelly found him to be an anxious, angry youngster, but easy to relate to. In her opinion, "continuity of care is the basic . . . the bottom line here," N.T. 310, thus indicating that Danny should stay with his mother. Mrs. Whelly did not think that the move to Atlanta would harm Danny, but rather would be beneficial, as he is a "very adaptable . . . resiliant" child.

As already stated, the court credited Mr. Berman's experts over appellant's, and gave as its reasons:

> In accepting the expert testimony offered by appellee, we note that Mr. Carter Nelson has had the benefit of a weekly relationship with Daniel from April 19, 1979, up to and including the hearings in this case. In addition, he, as well as Ms. Skula, had the benefit of meetings with both the Appellant, Appellee, and other siblings. Mr. Nelson was the "treating" psychologist, and had obviously developed a successful therapeutic relationship with Daniel. Ms. Whelly, on the other hand, did not become personally involved in this case until August 24, 1979, and then not for the purpose of professional treatment, but rather for the apparent purpose of offering professional testimony in this custody action. Her involvement was precipitated not by a desire to secure treatment of Daniel, but rather to

counter the adverse testimony given or to be given by Mr. Carter and Ms. Skula. (R. P. 299). Ms. Whelly's personal involvement was limited to a two hour meeting with the Appellant and Daniel on August 24, 1979. In addition, she did consult with certain associates who had a conversation with Appellant and who met or conferred with the Appellant for approximately two hours on August 22, 1979. On the basis of that limited involvement, Ms. Whelly appeared and testified that the best interest of Daniel would be served by his continued custody with his mother. She offered this opinion without ever having consulted with the Appellee or the Childrens Service Center, or more particularly with Mr. Carter Nelson or Ms. Skula, who had been involved with Daniel since January, 1979. In this regard, we also note that the witness' opinion is based upon her acceptance of the tender year doctrine and philosophies of Dr. Spock and others. (R. P. 305). We have no hesitancy in declaring our rejection of this witness' custodial theories, testimony and opinion. See *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977). Op. at 13–14.

We cannot find that the lower court abused its discretion in this regard. The trial judge, as the trier of fact, is the proper arbiter of an expert witness' credibility and of the weight to be accorded thereto. *Tinicum Real Estate Holding Company v. Comm., D.O.T.*, 480 Pa. 220, 389 A.2d 1034 (1978); *Foote v. Maryland Casualty Company*, 409 Pa. 307, 186 A.2d 255 (1962). The court set forth at length its reasons and we will not now second guess that determination. Further, we cannot accept appellant's contention that Nelson and Miss Skula were not qualified as experts in their field. It is well-settled that the qualifications of an expert witness is a matter within the discretion of the trial court. *Abbott v. Onopiuk*, 437 Pa. 412, 263 A.2d 881 (1970); *Kravinsky v. Glover*, 263 Pa.Super. 8, 20, 396 A.2d 1349, 1356 (1979). If a witness has any reasonable pretension to specialized knowledge of the subject under investigation, he or she is qualified as an expert. *Erschen v. Pa. Ind. Oil Company*, 259 Pa.Super. 474, 393 A.2d 924 (1978); *Ragan v. Steen*, 229

Pa.Super. 515, 331 A.2d 724 (1974). Under these standards, both Nelson and Miss Skula, in terms of education, experience, and background, clearly so qualify.

Appellant also avers that the court improperly disregarded the expressed preference of Danny to live with his mother. During an *in camera* hearing with Danny, the court asked the child several questions concerning his school, his ambitions, etc. Suddenly, Danny volunteered: "I hope you pick Atlanta because I want to ride my bike so badly." N.T. 508.

We recently said:

[A] child's preference, although not controlling, is a factor to be considered so long as it is, based upon good reasons. *Husack v. Husack*, 273 Pa.Super. 192, 417 A.2d 233 (1979); *Shoup v. Shoup*, 257 Pa.Super. 263, 390 A.2d 814 (1978); "In assessing the weight to be accorded the child's preference, [her] intelligence and maturity are to be considered with increased weight being accorded the preference as the child grows older." *Husack*, 273 Pa.Super. 196, 417 A.2d at 235. Where no reason, or a very inadequate reason for the preference is given for the child's choice, we have given no weight thereto. See, e. g., *McCourt v. Meyers*, 268 Pa.Super. 152, 407 A.2d 875 (1979); *Trefsgar*, supra. Moreover, where the child is particularly young, we have found his or her expressed preferences not to be the "mature and intelligent" decision which should sway a court. See, e. g., *Pamela J. K.*, supra (age 8); *Gunter v. Gunter*, 240 Pa.Super. 382, 389, 361 A.2d 307 fn. 2 (1976) (age 7). *Parks v. Parks*, 284 Pa.Super. 400, 426 A.2d 108, 115 (1981).

In the instant case, we do not think a child's interest in his bicycle is an adequate reason for his preference. Compare, *McCourt*, supra (child's interest in dog, held, not adequate reason) with *Wrecsics v. Broughton*, 285 Pa.Super. 90, 426 A.2d 1155 (1981) (child's desire to be loved, held, a "weighty reason" for her preference). Moreover, considering Danny's extreme youth at the time (age 7), we find no abuse of the court's discretion in not accepting his preference. Lastly, it appears that Mrs. Berman had already moved Danny's bike to Atlanta in anticipation of her move thereto. Thus, Dan-

ny's statement was "a simple childhood desire to ride his bicycle which had been removed to Atlanta." Opinion at 31.

Finally, we are cognizant of the familiar rule that in the absence of compelling reasons to the contrary, siblings should be raised together whenever possible. *Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 327, 421 A.2d 157, 160 (1980); *Pamela J. K. v. Roger D. J.*, 277 Pa.Super. 579, 419 A.2d 1301 (1980). Thus, appellant urges that since Melissa has been awarded to the mother, then Danny should be also. However, we have previously emphasized that the "whole family doctrine" is but one factor to be considered in deciding the child's best interests. *Tobias v. Tobias*, 248 Pa.Super. 168, 374 A.2d 1372 (1977). "[T]he rule must yield to the paramount principle that the best interests of each child must be the determining factor." *In Re Russo*, 237 Pa.Super. 80, 85, 346 A.2d 355, 357 (1975). In the present case, the lower court could properly accept Mr. Nelson and Miss Skula's testimony that a move to Atlanta would have very detrimental effects on Danny and that he needs his father. In such a case, the child's best interest would not be served by enforcing the rule of *Albright*, supra, and related cases. Moreover, Danny will not be separated from all his siblings for it appears that his older brother and sister, David and Sheri will be remaining in the Kingston area. There was no error.