580 A.2d 418

**In the Interest of C.S.**

**Appeal of R.S.**

**T.S., Clinton County Children & Youth Services.**

Superior Court of Pennsylvania.

Argued May 22, 1990.

Decided Sept. 24, 1990.

Stephen C. Smith, Pittsburgh, for appellant.

Frederick D. Lingle, Lock Haven, for C.S., participating party.

Craig P. Miller, Lock Haven, for T.S., participating party.

Before OLSZEWSKI, MONTEMURO and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

This is an appeal from a disposition order maintaining legal and physical custody of a minor child, C.S., with the Clinton County Children and Youth Social Services Agency. The order directs the agency to continue foster care placement for said minor. The natural father of C.S., R.S., has appealed. The natural mother, T.S., has filed a brief in support of the trial court's order, and the child advocate has joined in this brief. The agency has not filed a brief in this matter. Upon our review of the record, the briefs, and the applicable law, we hold that the trial court did not abuse its

discretion regarding its disposition of C.S. and therefore, affirm.

On November 17, 1988, the Clinton County Children and Youth Social Services Agency became involved with the father, R.S., and mother, T.S., concerning a home investigation as a result of a custody proceeding over C.S., born January 13, 1988. During its investigation, the agency discovered that there was little food in the house and that C.S. had a severe diaper rash. In order to remedy the situation, the agency caseworker took T.S. to the Department of Public Assistance to secure financial benefits. Also, the agency maintained contact on a weekly basis with T.S. during November and December of 1988. However, on December 21, 1988, T.S. contacted the agency requesting that C.S. be placed in foster care on a voluntary basis. T.S. informed the agency that because she and R.S. were fighting continually, she feared for C.S.'s safety as well as needing some time away from the child. Soon thereafter, T.S. was admitted to Divine Providence Inpatient Mental Health Unit for treatment.

On January 11, 1989, the agency filed a petition alleging that C.S. was a dependent child under 42 Pa.C.S. § 6302 of the Juvenile Act, and requested a hearing to adjudicate her dependency. Following two hearings, January 23, 1989, and March 2, 1989, the taking of testimony, and the presentation of psychological reports, the parties agreed on March 2, 1989, to adjudicate C.S. as a dependent child. At that time, the court ordered that legal and physical custody of C.S. be transferred to the agency pending a disposition hearing. On May 12, 1989, the Clinton County Children and Youth Social Services Agency requested a dispositional review hearing of the C.S. matter in accordance with 55 Pa.Code § 3130.72. On June 6, 1989, the court conducted a hearing pursuant to the agency's petition. Following testimony given by the agency's caseworker, the paternal grandmother, and the natural father, R.S., the court continued the hearing until August 23, 1989, without an objection by any party, in order for the agency to evaluate the matter

further. However, given that this was the first hearing since C.S. had been adjudicated dependent, the court determined that this was a disposition hearing and not a dispositional review hearing as petitioned by the agency.[1] All parties agreed to this determination. Following the hearing on August 23, 1989, and the testimony of R.S., the paternal grandmother, M.S., the natural father's sister in-law, C.S., and two agency caseworkers, the court ordered the child, C.S., to remain in the legal and physical custody of Clinton County Children and Youth Social Services Agency for continued foster care placement other than in the home of M.S., the paternal grandmother. Appellant, the natural father, appealed this ruling on October 10, 1989.

■ Appellant asserts that the trial court erred in not allowing C.S. to be returned home to him and her paternal grandparents since the petitioner, Clinton County Children and Youth Social Services Agency, had recommended such a placement. Although appellant complains of C.S.'s placement, he initially argues that C.S. should not have been declared a dependent child. It is well-settled that:

The standard of review which this Court employs in cases of dependency is broad. *In Re Custody of Neal,* 260 Pa.Super. 151, 393 A.2d 1057 (1978). However, the scope of our review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977). We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. *In Re Interest of Black,* 273 Pa.Super. 536, 417 A.2d 1178 (1980); *In Re Kunkle,* 265 Pa.Super. 605, 402 A.2d 1037 (1979). Relying upon his unique posture, we will not

1. A disposition hearing is held following the finding of dependency in order to determine an appropriate placement for the dependent child which is best suited for the protection of the child's physical, mental, and moral welfare. 42 Pa.C.S. § 6351. A dispositional review hearing is designed to ensure that the child's removal from the home continues to be warranted and is in the child's best interests. *Id.*

overrule his findings if they are supported by competent evidence. *Commonwealth ex rel. Morales v. Morales,* 222 Pa.Super. 373, 294 A.2d 782 (1972).

*In Re Frank W.D.,* 315 Pa.Super. 510, 517, 462 A.2d 708, 711 (1983).

Our legislature has defined a dependent child as:

a child who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals;

42 Pa.C.S. § 6302(1). Our review of the record reveals that C.S.'s mother, T.S., was suffering from mental health problems and needed to be hospitalized for some time, and later sought treatment at a group home where she was residing. Appellant, R.S., the natural father, suffers from alcohol and substance abuse problems, was serving time for alcohol and drug related offenses, and could not be C.S.'s caretaker until he had finished his sentence. More importantly, the parties, including appellant, agreed on March 2,1989, following the taking of testimony, to adjudicate C.S. as a dependent child. As the evidence presented in the record clearly and convincingly demonstrates that C.S. was without proper parental care and control, and that parental care was not available immediately, the trial court did not err in adjudicating C.S. dependent. *In the Interest of Y.P.,* 353 Pa.Super. 185, 509 A.2d 397 (1986).

■ However, once C.S. was declared to be a dependent child, her removal from the care of her parents must meet a much stricter standard. In order for C.S. to be removed from her parents, a clear necessity must be shown in that any alternatives to separation were unfeasible. *In the Interest of Feidler,* 392 Pa.Super. 524, 573 A.2d 587 (1990); *In the Interest of Y.P., supra.* The record reveals that T.S., the mother, conceded that she was not in a position to have C.S. returned to her as she was living in a group home and receiving treatment in a therapy program. The petitioner, Clinton County Children and Youth Social Services Agency, recommended that C.S. be placed in the home of

her paternal grandparents, M.S. and K.S. Initially, as appellant, R.S., would be living with his parents once he had completed his sentence, he and his mother, M.S., would be C.S.'s primary caretakers. When neither of them would be available to care for C.S., then a paternal aunt would care for C.S.

Following the presentment of testimony on June 6, 1989, the agency requested a continuance to investigate another possible caretaker's home, another paternal aunt who would replace the first paternal aunt, and to clarify some of appellant's testimony. On August 23, 1989, the testimony continued and the agency informed the court that the second paternal aunt, C.S., would be the child's caretaker if M.S. was not available. Appellant's role as C.S.'s caretaker seemed to have been abandoned by the agency, but it is not clarified in the record. As no one has challenged appellant's standing to appeal this matter, and he is C.S.'s natural father, we will not consider it a detriment to our review. See Pa.R.A.P. 501; In Re Adoption of B.E.W.G., 355 Pa.Super. 554, 513 A.2d 1061 (1986).

Our review of the record reveals that the trial court found the paternal grandmother, M.S., and the paternal aunt, C.S., to be fit caretakers for the child, C.S., but was not so convinced about the abilities of appellant, R.S., and the paternal grandfather, K.S. Specifically as to R.S., the trial court found progress in appellant's attempt to address his alcohol and drug abuse problems, but that it needed to see him "establish a drug and alcohol free track record" before he would be permitted to care for C.S. Trial court opinion, 9/15/89 at 7. Also, the trial court considered appellant's previous behavior of taking C.S. to a gathering "where drinking and fighting eventually occurred" as not being conducive to C.S.'s best interests. Id. As for K.S., the paternal grandfather, the court was troubled about his previous conviction and time served for statutory rape. Although this occurred thirty years ago, the psychological evaluation conducted by the agency of K.S. did not "address inquiries and assessments toward that circumstance to de-

termine if [K.S.] would represent any type of present danger to [C.S.] if she were in the home." Trial court opinion, 9/15/89 at 6.[2] However, the psychological evaluation of K.S. did disclose:

[a] man whose denial and repression tend to interfere with the development of insight and conflict resolution. He also concluded there was evidence of various less severe psychological problems and that [K.S.] appeared to be both chronically anxious and depressed. He was observed as being fairly rigid, staid, and a person who tended to avoid activity and excitement beyond the limitations of his physical disability.

*Id.* at 5–6.

Although the paternal grandmother, M.S., and the paternal aunt, C.S., would care for the child, and she would not be at home alone with K.S., the court was cognizant of the tension that could develop over this prohibition. The trial court insightfully evaluated M.S.'s role in the suggested placement as being "as much of a watchdog with respect to her son and husband as it does a caretaker with respect to [C.S.]." *Id.* at 8. Accordingly, the learned trial judge appropriately found:

[t]he Court is somewhat uncertain as to the correct approach at this time, but after considering all of the circumstances it would prefer to err in favor of the safety of [C.S.] as opposed to some slight setback timewise in achieving the goal of family reunification. At this point the Court has little indication when or if this goal might be achieved. Accordingly, the disposition will require Petitioner to keep [C.S.] in foster care where she now is.

*Id.* The trial court left the door open for future placement with M.S. if its concerns about R.S. and K.S. were ad-

2. Although no one informed the psychological evaluator of K.S.'s previous conviction, the agency knew that K.S. had a criminal record, but neglected to pursue the specifics of it. Notes of Testimony, 6/6/89 at 9–12. This method of evaluating child caretakers is in contravention to the requisite information needed to comply with 11 P.S. § 2223.1., Information relating to prospective child care personnel.

dressed adequately. Based upon the foregoing, we hold that the trial court did not err in not implementing the petitioner's recommended placement for C.S. Accordingly, we affirm.

Order affirmed.