635 A.2d 170

**In the Matter of LUIS R., Angel M. and Melissa C.**

**Appeal of LUIS C.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1993.

Filed Dec. 6, 1993.

Barry Greenspan, Philadelphia, for appellant.

Carolyn O'Garro–Moore, Philadelphia, for participating party Dept. of Human Services.

Ellen Ceisler, Philadelphia, for participating parties Luis R., Angel M. and Melissa C.

Jay H. Ginsburg, Norristown, for participating party Bionette R.

Before WIEAND, CIRILLO and HESTER, JJ.

HESTER, Judge.

Luis C. appeals from the order dated September 16, 1992, which continued the dependency of his children, Luis, Angel,

and Melissa, suspended his visits with them, and changed the goal of the family service plan to adoption. We affirm.

Luis was born on June 3, 1987, to appellant-father and Bionette R., Mother. Both parents were fifteen years old at the time of Luis's birth.[1] Angel was born on July 18, 1988, and Melissa was born on April 2, 1990. On October 24, 1990, the Department of Human Services ("DHS") found Luis, Angel, and Melissa in the care of Bionette's mother, Obedelia R. Mother's whereabouts were unknown; appellant was incarcerated at the time. The home in which the children were found had been cited for code violations which were deemed an emergency and health hazard, and the dwelling had been declared unfit for human habitation by the Department of Licences and Inspections.[2] Luis and Angel were placed together in a foster home, and Melissa was placed separately. The children were adjudicated dependent on November 14, 1990, and continued in foster care at that time.

In December, 1990, appellant, who had been released from prison in November, 1990, and Mother agreed to and signed the individual service plans which had been developed for the children. One of the requirements of the plan was for both parents to obtain drug treatment. Appointments were made for a drug and alcohol treatment program in December, 1990, but both parents failed to attend. Another appointment was made for January 17, 1991; again, appellant did not attend.

In February, 1991, appellant was incarcerated again. He was released to a halfway house six months later, at which time a visit with the children occurred on August 13, 1991. A visitation schedule was established for appellant and visits were set for August 29, September 12 and 26, and November 12, 1991. Appellant failed to appear at any of the scheduled visits. Appellant also had failed to attend GED and drug and

1. Luis was mother's second child.
2. The living conditions of the family were of heightened concern to DHS in light of the fact that the family previously had utilized illegal electric and gas connections which resulted in a fire in 1988 in which Mother's first child, also named Melissa, and two of Mother's siblings perished.

alcohol treatment programs, two requirements of the individual service plans for the children.

Appellant absconded from the halfway house in September, 1991, and was incarcerated again by December, 1991. On March 2, 1992, DHS filed a motion for a goal change to adoption. At a hearing held June 12, 1992, the parties stipulated to the facts as set forth in the motion for goal change, which we summarized above. Notes of Testimony ("N.T."), 6/12/92, at 2. The motion for goal change was granted as to Mother and continued as to appellant, to allow him the opportunity to produce evidence of efforts made while incarcerated to comply with the individual service plans' objectives.

A hearing was held on September 16, 1992, following which the common pleas court granted the motion for goal change to adoption. This appeal followed the denial of a motion to reconsider.

It is well-settled that:

> The standard of review which this Court employs in cases of dependency is broad. *In re Custody of Neal,* 260 Pa.Super. 151, 393 A.2d 1057 (1978). However, the scope of our review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977). . . . [W]e will not overrule [the trial court's] findings if they are supported by competent evidence. *Commonwealth ex rel. Morales v. Morales,* 222 Pa.Super. 373, 294 A.2d 782 (1972).

*In the Interest of C.S.,* 397 Pa.Super. 519, 522–23, 580 A.2d 418, 420 (1990); *see also In the Interest of R.C.,* 427 Pa.Super. 196, 628 A.2d 893 (1993). "While our standard of review in dependency cases is generally quite broad, we must defer to the fact finding of the hearing judge who had the opportunity to observe and rule upon the credibility of the witnesses and parties who appeared." *In re S.M.,* 418 Pa.Super. 359, 362, 614 A.2d 312, 313 (1992).

Appellant argues that DHS failed to explore placement of the children with relatives in Puerto Rico in violation of the

requirement of reunification of the family set forth in the Juvenile Act, 42 Pa.C.S. § 6301 *et seq.* We examined the significance and interaction of the family service plan and designated goal established for a dependent child in *In re Interest of M.B.*, 388 Pa.Super. 381, 386–87, 565 A.2d 804, 807 (1989), where we stated:

> [T]he importance of the service plan and the goal it identifies for the child involved cannot be overemphasized. As we recently noted in an article appearing in the *Children's Rights Chronicle*, produced by the Juvenile Law Center:
>
>> ... the family service plan is the key to the dependency process. It provides a social work tool which spells out a goal and everyone's tasks in reaching toward that goal. All parties to the plan should participate in its formation so that they understand the problems facing the family and also understand what is expected of them to remedy those problems.
>>
>> By documenting what the parents, agency and other players in the process need to do, the FSP [the plan] is also legally valuable when efforts fail to reunify a family.... the lawyers should elicit testimony so that the court sees a parent's performance in reference to the guidelines spelled out through the FSP tasks. The court can thus determine when efforts toward reunification have been made but because of repeated lack of cooperation or failure, the necessary tasks cannot be performed and the goal should be abandoned.
>
> Remarks of Sam Magdovitz of Juvenile Law Center, reprinted in *Children's Rights Chronicle*, Volume Six, No. 3, at 1 (1987–88).

The trial court disagreed with appellant's claim, as do we. By granting the goal change to adoption, the trial court has determined that adequate services have been provided to appellant, but he nonetheless is incapable of caring for his children and therefore, adoption is appropriate. A review of the record reveals that a myriad of interventions were arranged for appellant so that he could achieve the goals outlined in the family service plans. Appellant refused to cooper-

ate and participate in any of the programs offered to him, which was the only mechanism by which he could have ameliorated the conditions and climate which lead to the determination of dependency of his children and their placement in foster care.

■ There is no basis for appellant's argument that according to Pennsylvania regulations governing the placement of children in foster homes, there is a sequential hierarchy of goals which must be identified by the agency. 55 Pa.Code § 3130.67(b)(9) sets forth the permissible goals for a child in placement:

§ 3130.67—Placement Planning.

(a) Except for emergency placement, the county agency shall prepare an amendment to the service plan prior to placing a child.

(b) The amendment to the service plan shall include the following for each child placed:

. . . .

(9) An identification of one of the following goals for the child in placement:

(i) Return to own home.

(ii) Placement in the home of another relative.

(iii) Adoption.

(iv) Placement with a legal guardian.

(v) Independent living.

(vi) Long-term placement.

It is clear that one goal is not mandated over another; nor does the language of the regulation require that each goal be implemented in the order in which they are listed.

■ Furthermore, appellant has misrepresented in his brief the availability of relatives to care for his children and the availability of this information to DHS at the time the motion for goal change was presented. N.T., 9/16/92, 46–54. There is no requirement that DHS or the trial court engage in an exhaustive investigation into appellant's family before

changing the goal to adoption. Moreover, once appellant provided information concerning family members, DHS did take action to ascertain the feasibility of placing the children with them by ordering an investigation and home study through an interstate compact. *Id.* at 48–49. It is clear that the trial court evaluated all of the factors impacting on this determination and concluded that adoption is the most appropriate goal for these children.

■ Our comments regarding appellant's claim that he was not afforded an opportunity to satisfy the goals of the family service plans can be brief. Our review of the record reveals that DHS provided appellant with **countless** opportunities to meet the goals of the family service plans, all to no avail. We reject appellant's excuse that because he was incarcerated for a significant period, there were no services available to him in prison which would have enabled him to meet the goals of the family service plans. We agree with appellee and the trial court that appellant was provided with a plethora of services when he was not incarcerated which he totally ignored. He failed even to visit with his children when he had the opportunity. Finally, appellant's actions in applying to a drug rehabilitation program and writing four letters inquiring about his children in the spring of 1992, all actions initiated after the goal change motion had been filed and nearly two and one-half years after his children had been placed in foster care, are prime examples of "too little, too late." The trial court reasonably regarded these last minute, half-hearted actions with skepticism.

Appellant's final argument is that the child advocate should have acted as legal counsel to the children and instead, acted as guardian *ad litem*. We agree with the trial court that since the child advocate fulfilled its duty to assert the children's best interests, there was no error.

Order affirmed.