J-A28004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.J.W., FATHER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| F.J.W., MOTHER | |
| Appellee | No. 1513 EDA 2015 |

Appeal from the Order Entered April 24, 2015
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C-48-CV-2013-9535

BEFORE: GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED OCTOBER 26, 2015**

Appellant, R.J.W. ("Father"), appeals from the order entered in the Northampton County Court of Common Pleas, which granted primary physical custody of M.W. ("Child") to Appellee, F.J.W. ("Mother"), and granted Mothers' petition for relocation. We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.[1] Therefore, we have no reason to restate them.[2]

---

[1] We add that on September 19, 2014, the court denied Mother's petition for emergency custody relief.

[2] On March 24, 2014, the court granted Mother's relocation petition and awarded her primary physical custody of Child. The court also gave Father partial physical custody every other weekend during the school year. Father

*(Footnote Continued Next Page)*

Father raises the following issue for our review:

THE TRIAL COURT'S FINDINGS OF FACT ARE NOT SUPPORTED BY THE EVIDENCE, [THE COURT] ABUSED ITS DISCRETION AND/OR COMMITTED ERRORS OF LAW BY FAILING TO PROPERLY CONSIDER THE FACTORS IN AWARDING CUSTODY (23 PA.C.S.A. SECTION 5328) AND THE RELOCATION FACTORS (23 PA.C.S.A. SECTION 5337) AND UNREASONABLY CONCLUDED THAT PHYSICAL CUSTODY SHOULD BE CHANGED.

(Father's Brief at 4).

In reviewing a child custody order:

[O]ur scope is of the broadest type and our standard is abuse of discretion.  This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.  However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*(Footnote Continued)* ————————————

timely filed a motion for reconsideration on March 27, 2015.  The court conducted a hearing on April 20, 2015, and immediately vacated the March 24, 2015 custody order and deemed it temporary pending reconsideration. This action satisfied the requisites of Rule 1701(b)(3), which states that, following a timely motion for reconsideration plus a timely order granting reconsideration, the time for filing a notice of appeal or petition for review begins to run anew.  Pa.R.A.P. 1701(b)(3).  The court subsequently filed an amended custody order on April 24, 2015, which increased Father's partial physical custody to three weekends every month during the school year.  On May 20, 2015, Father timely filed a notice of appeal and Rule 1925(a)(2)(i) concise statement.

***S.J.S. v. M.J.S.***, 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation

omitted). Additionally,

> [O]ur Legislature adopted a new Child Custody Act ("Act"), effective on January 24, 2011. ***See*** 23 Pa.C.S.A. §§ 5321–5340. The new Act applies to "disputes relating to child custody matters" filed after the effective date of the new law. 23 Pa.C.S.A. § 5321. In ***E.D. v. M.P.,*** 33 A.3d 73, 76 (Pa.Super. 2011), we held that the Act applied to any proceeding, including a petition for relocation, initiated by a *filing* made after the effective date of the Act.

***Id.*** With respect to a custody order, Section 5328(a) provides:

> **§ 5328. Factors to consider when awarding custody**
>
> **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.

(5)    The availability of extended family.

(6)    The child's sibling relationships.

(7)    The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)    The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)    Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)   Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)   The proximity of the residences of the parties.

(12)   Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)   The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)   The history of drug or alcohol abuse of a party or member of a party's household.

(15)   The mental and physical condition of a party or member of a party's household.

(16)   Any other relevant factor.

23 Pa.C.S.A. § 5328(a).  In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody

decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant custody factors, complies with Section 5323(d). *Id.*

The new Act defines "Relocation" as "[a] change in residence of the child which significantly impairs the ability of a non-relocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a); *C.M.K. v. K.E.M.*, 45 A.3d 417, 422-25 (Pa.Super. 2012). Section 5337 sets forth the procedures and factors governing relocation in relevant part as follows:

**§ 5337. Relocation**

**(a) Applicability.**—This section applies to any proposed relocation.

**(b) General rule.**—No relocation shall occur unless:

(1) every individual who has custody rights to the child consents to the proposed relocation; or

(2) the court approves the proposed relocation.

**(c) Notice.**—

(1) The party proposing the relocation shall notify every other individual who has custody rights to the child.

(2) Notice, sent by certified mail, return receipt requested, shall be given no later than:

(i) the 60th day before the date of the proposed relocation; or

(ii) the tenth day after the date that the individual knows of the relocation, if:

(A)    the individual did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60–day notice; and

(B)    it is not reasonably possible to delay the date of relocation so as to comply with the 60–day notice.

(3) Except as provided by section 5336 (relating to access to records and information), the following information, if available, must be included with the notice of the proposed relocation:

(i)    The address of the intended new residence.

(ii)    The mailing address, if not the same as the address of the intended new residence.

(iii)    Names and ages of the individuals in the new residence, including individuals who intend to live in the new residence.

(iv)    The home telephone number of the intended new residence, if available.

(v)    The name of the new school district and school.

(vi)    The date of the proposed relocation.

(vii)    The reasons for the proposed relocation.

(viii) A proposal for a revised custody schedule.

(ix)    Any other information which the party proposing the relocation deems appropriate.

(x)    A counter-affidavit as provided under subsection (d)(1) which can be used to object to the proposed relocation and the modification of a custody order.

(xi)    A warning to the nonrelocating party that if the nonrelocating party does not file with the court an

objection to the proposed relocation within 30 days after receipt of the notice, that party shall be foreclosed from objecting to the relocation.

(4) If any of the information set forth in paragraph (3) is not known when the notice is sent but is later made known to the party proposing the relocation, then that party shall promptly inform every individual who received notice under this subsection.

**(d)  Objection to proposed relocation.**—

(1) A party entitled to receive notice may file with the court an objection to the proposed relocation and seek a temporary or permanent order to prevent the relocation.  The nonrelocating party shall have the opportunity to indicate whether he objects to relocation or not and whether he objects to modification of the custody order or not.  If the party objects to either relocation or modification of the custody order, a hearing shall be held as provided in subsection (g)(1). The objection shall be made by completing and returning to the court a counter-affidavit, which shall be verified subject to penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities), in substantially the following form…

* * *

**(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1)  The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2)  The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special

needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(a)–(d) (h).  Moreover,

[T]he party proposing relocation…bears the burden of proving relocation will serve the children's best interests.  **See** 23 Pa.C.S.A. § 5337(i).  Each party, however, has the burden of establishing "the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation."  23 Pa.C.S.A. 5337(i)(2).

*S.J.S., supra* at 551. In all of these proceedings:

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> > The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Emil Giordano, we conclude Father's issue merits no relief. The trial court comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed March 24, 2015, at 7-22) (examining each relevant factor under applicable statutes; concluding custody and relocation decisions are in Child's best interest). The record supports the court's decision; therefore, we see no reason to disturb it. Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/26/2015



**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY**
**COMMONWEALTH OF PENNSYLVANIA**
**CIVIL DIVISION**

| | |
|---|---|
| R. W. <br><br> Plaintiff <br><br> vs. <br><br> F. J. W. <br><br> Defendant | NO. C-48-CV-2013-9535 |

**OPINION**

The instant matter commenced on September 24, 2013, when R.W. ("Father") filed a complaint and a petition for special relief against ("Mother") regarding custody of their minor child M. W. ' or "Child"). A hearing was held on October 3, 2013, and an Order of Court was entered on October 15, 2013, whereby the parties agreed that Father and Mother would share legal custody of Child , but Father would exercise primary physical custody.

On September 11, 2014 Mother filed a Petition for Emergency Relief seeking custody of the Child based on Mother's alleged recent discovery of Father's criminal history comprised of a conviction for voluntary manslaughter in 1982. Subsequently, on September 19, 2014, this Court appointed Ellen Kinglsey, Esquire, as Guardian Ad Litem ("GAL") for Child . On October 27, 2014 Mother filed a Notice of Relocation seeking to move with the Child to Mechanicsburg, Pennsylvania to live with her fiancé R. M. ). Father objected to the relocation in a counter-affidavit filed on November 4, 2014.



1

Mother's Petition for Emergency Relief and her Notice of Relocation came before the undersigned on Monday, December 15, 2014 via the Non-Jury list, wherein a hearing was held. Due to the nature of the issues, the matter was continued to the February 9, 2015 Non-Jury list in order for the depositions of Phillip J. Kinney, PhD., Faust Ruggiero, M.S., C.A.C and Ashley Milspaw, Psy.D to be completed and added to the record. Upon review of the testimony, arguments, briefs, depositions, and reports, the instant matter is now ready for disposition.

## FINDINGS OF FACT

1. Mother and Father are the parents of a minor daughter, ι ᵐ. ₩₀ ., who was born on March ᴶ 2010. N.T. at 127:14.

    a. Mother is currently thirty (30) years old. N.T. at 204:15-21.

    b. Father is currently fifty-eight (58) years old. N.T. at 120:6.

2. Mother is a native of the Philippines and Father is a native of the United States.

3. After Father divorced his previous wife, he joined Singles Ministry in Indiana, Pennsylvania, an online matchmaking service, through which he was first introduced to Mother. N.T. at 123:18—124:12.

    a. Father first made contact with Mother in 2002, when she was living in the Philippines. N.T. at 20:23—21:5; 125:14-17.

4. Father and Mother first met in person in 2003. N.T. at 125:19.

5. Father and Mother married in December 2004. N.T. at 126:1.

6. Mother and Father first separated in 2009. N.T. at 25:3; 126:8.

2

a. Prior to their separation, Mother and Father did not have any children together. N.T. at 126:12-15.

7. Father learned Mother was pregnant during the time when the parties were living separate, but attempting to reconcile their marriage. N.T. at 127:7-11.

8. After Child's birth in 2010, the parties resumed living together until their final separation on August 12, 2013. N.T. at 127:24—128:11.

9. Mother lived with her friend M. and her family after the parties' final separation in August 2013. N.T. at 128:12—129:16.

10. In September 2013, Mother moved in with R.M. in Mechanicsburg, Pennsylvania. N.T. at 99:25—100:1; 105:17-19.

a. R.M. has lived at that address for about fifteen (15) years. N.T. at 100:9-11.

11. Mother and R.M. have one child together, an eight (8) month old baby girl. N.T. at 103:14-17.

a. R.M. is currently sixty (60) years old. N.T. at 204:22-23.

12. Father currently lives in Bangor, Pennsylvania 18013. N.T. at 119:22-24.

13. Father is employed part-time. N.T. at 120:19-21.

a. Father has worked for said company for almost seven (7) years performing tasks such as driving, running for parts, cleaning bathrooms and other miscellaneous tasks. N.T. at 120:20—121:7.

b. Father works 8:30 am to 1:30 pm or 8:30 am to 2:30 pm about four (4) to five (5) days a week. N.T. at 161:24—162:3.

3

14. Father earns approximately One Thousand Fifty dollars ($1,050) per month N.T. at 122:19-25.

    a. Father also receives monthly social security disability and private disability payments. N.T. at 122:12-18.

15. The parties are operating under a custody order entered October 15, 2013 which dictated that:

    a. The parties have shared legal custody;

    b. Father has primary physical custody;

    c. Mother has partial physical custody;

    d. Mother has custody of *Child* from 12:00 pm on Friday until 6:00 pm on Sunday on three (3) consecutive weekends.

    e. Father has custody the weekend after Mother's three (3) weekends.

16. The custody exchanges between Mother and Father were originally held at Cabela's, but had to be changed to Hamburg State Police Barracks in Hamburg, Pennsylvania, via a Court Order on April 26, 2014. N.T. at 111:19-22.

17. *Child* attends Pre-School in Bangor, Pa. N.T. at 132:21-24.

    a. *Child* attends school five (5) days a week from 8 am to 4 pm. N.T. at 132:25—133:5.

18. Ellen Kinglsey, Esquire, is the Court appointed Guardian Ad Litem ("GAL") for *Child*.

19. *Child* attends behavioral therapy sessions with Ashley Milspaw Psy.D. ("Milspaw") of Beacon Psychological Services of Pennsylvania, LLC.

4

a. *Child* , has attended therapy sessions with Milspaw on seven (7) occasions as of the date of Milspaw's deposition on January 28, 2015.

**STANDARD OF LAW**

**Custody Factors in 23 Pa. C.S.A. § 5328(a)**

When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant section 5328(a) factors. A.V. v. S.T., 87 A.3d 818, 822 (Pa. Super. Ct. 2014) (citing E.D. v. M.P., 33 A.3d 73, 80 (Pa. Super. Ct. 2011)). All factors listed in section 5328(a) must be considered by the trial court when entering a custody order. S.T., 87 A.3d at 822 (citing J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa. Super. Ct. 2011)). Upon review of a petition to modify custody, a court may modify a custody order to serve the best interest of the child. 23 Pa. C.S.A. § 5328(a).

Nevertheless, in ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child. Id. After considering all factors, the Court may make an award of shared, primary, partial, sole, or supervised physical custody, as well as shared or sole legal custody, provided such award is in the best interest of the child. Id. at § 5323. In evaluating the best-interest standard, the Court must examine the following factors:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

5

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

6

(16) Any other relevant factor.

Id. at § 5328(a).

## DISCUSSION

### Custody Factors in 23 Pa. C.S.A. § 5328(a)

First, this Court must consider which party is more likely to encourage and permit frequent and continuing contact between the child and another party. 23 Pa. C.S.A. § 5328(a)(1). In this case, Mother testified that there were times when Father did not answer her phone calls when she called Child , and there were other times when Father only allowed Child to talk to Mother for a very brief period of time. N.T. at 195:18-24. Father testified that although he monitors the phone calls between Mother and Child, he does not, and will not, prohibit the Child from talking to her Mother. Id. at 138:9-16; 166:16—167:1; 167:18-23. Father also testified that he once took the Child to the custody exchange and Mother was not present, but he nevertheless drove the Child to Mechanicsburg because the Child wanted to see her Mother. Id. at 150:12—151:2.

The testimony in this case demonstrates that the parties have trouble communicating with each other and often use custody of the Child to harass or initiate confrontation with the other party. However, neither of them consistently discourages the Child from speaking to the other parent. Thus, this factor will not be weighed in favor of either party.

The second factor requires the Court to consider the present and past abuse committed by a party or by a member of the party's household. 23 Pa. C.S.A. § 5328(a)(2). The Court must also determine based on that finding whether there is a continued risk of harm to the child or an abused party. Id. Finally, the court must consider which party can better provide adequate

7

physical safeguards and supervision of the child. Id.[1] Despite the witnesses who testified on behalf of Father attesting to his good demeanor and his ability to control his anger issues, the fact remains that Father was convicted of voluntary manslaughter in 1982. N.T. at 15:13-18; 16:23—17:20; 52:17-25 59:5-10; 96:1-10; 151:21—153:4. Additionally, the Court observed the demeanor of Father who appeared to anger quickly and unexpectedly. This, coupled with the fact that there was no testimony of any abusive behavior exhibited by Mother, requires the Court to weigh this factor in favor of Mother.

A subsection of the second factor sets forth that the Court must consider the information in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services). 23 Pa. C.S.A. § 5328(a)(2.1). Section 5329.1(a) sets forth:

> "in accordance with section 6340(a)(5.1) (relating to release of information in confidential reports), where a party seeks any form of custody subject to the examination of the parties, the court shall determine:
>
> (1) With respect to child abuse under Chapter 63 (relating to child protective services) or a child who is a victim of a crime under 18 Pa.C.S. (relating to crimes and offenses) which would constitute abuse under Chapter 63:
>
> (i) Whether the child is the subject of an indicated or founded report of child abuse.
>
> (ii) Whether a party or a member of the party's household has been identified as the perpetrator in an indicated or founded report of child abuse.
>
> (iii) The date and circumstances of the child abuse.

---

[1] As used in this section, "abuse" has the same definition used in Section 6102(a) of the Protection From Abuse Act, 23 Pa. C.S.A. § 6102(a). 23 Pa. C.S.A. §5322(a).

8

(iv) The jurisdiction where the child abuse investigation took place."

23 Pa. C.S.A. § 5329.1(a).

In the instant matter, there were allegations by the Child that she was subject to inappropriate touching in both parents' households. N.T. at 197:18. However, upon investigation by Children and Youth, those allegations were deemed unfounded. As such, this factor has been considered in the Court's decision.

The third factor requires the Court to consider the parental duties performed by each party on behalf of the child. 23 Pa. C.S.A. § 5328(a)(3). Father has exercised primary physical custody of the Child since October 2013. N.T. at 17:21—18:1. However, throughout the Child's life, both parties have performed the parental duties expected of parents raising a young child, and the record demonstrates that neither parent has been deficient in performing those duties.

Father testified that he assists the Child with her everyday routine from the time she wakes up for school until the time she goes to bed, and he ensures that the she is fed, gets adequate sleep, and is bathed. He also provides her with ample love and support. Id. at 136:5-18; 136:19—137:4; 137:5-11; 161:13-18. Father further testified that some of the activities and programs the Child participates include preschool, ballet, gymnastics, and swimming lessons. Id. at 133:9—134:10. Father explained that he placed the Child in preschool because he believes that education is second most important thing in Child's life besides her safety. Id. at 131:20—132:3.

The record also reflects that Mother was able to perform the parental duties necessary to ensure the healthy upbringing of a young child, both prior to, and after, the parties' final separation. Id. at 160:6-11; 162:12-15; 163:7-10; 173:17-25; 174:3-4; 175:4—176:6. Further,

9

when Mother exercises her custodial time with Child, Mother has *Child* on a routine wherein she ensures *Child* is receiving proper care and all of Mother's love and support. Id. at 191:20—193:3. As such, this Court weighs this factor in favor of neither party.

The fourth factor requires the Court to consider the need for stability and continuity in the child's education, family life and community life. 23 Pa. C.S.A. § 5328(a)(4). In custody decisions, the court must consider the importance of continuity in the child's life and the desirability to develop a stable relationship with established parental figures and with the known physical environment. Wiseman v. Wall, 718 A.2d 844, 850 (Pa. Super. Ct. 1998). "Parental figures" may include individuals living in the households of a child's parents. Id.

Throughout the time that Father has exercised primary physical custody of the Child, he enrolled her in preschool and established a daily routine with her. Father testified that his income is minimal, but he can pay his bills and living expenses and still have enough money left to meet *Child's* needs. N.T. at 123:1-11. During the Child's time with Father, she has been able to develop and grow as an individual and learned to assimilate herself within Father's community. Moreover, Father's home is situated such that *Child* can safely play outside. Id. at 133:1. Although Father does not have family living close to him, Child's Godmother, *I.V.* ("Godmother") is involved in the Child's life and she has young children with whom the Child interacts. Id. at 134:24; 135:1-7.

*R.M.* testified that his home is in a community where the Child can safely play outside and socialize with other children. Id. at 106:4-15. *R.M.* further testified that he is able to financially and emotionally support Mother and the Child, and that his relationship with *Child* is very good and he enjoys interacting and spending time with her. Id. at 105:23—

10

106:15. Further, Child's eight (8) month old half-sister lives in R.M.'s home and the Child has developed a fond relationship with her while simultaneously learning to live and adapt to Mother's schedule and routine during her visits to Mechanicsburg.

Since the Child has developed a routine with both Father and Mother, and due to the fact that she has been exposed to the different aspects of both parties' communities and has sufficiently adapted to living in both parents' homes, the Court will weigh this factor in favor of neither party.

The fifth factor requires the Court to consider the availability of extended family. 23 Pa. C.S.A. § 5328(a)(5). In this case, Father has a sister and a foster brother, neither of whom live close to Father's home. N.T. at 66:25; 68:15-2; 73:8-11; 74:16. Although Father's sister has two (2) grandchildren who are around the Child's age, the Child has limited interactions with them. Id. at 74:21-23; 74:24—75:4; 109:13-22. Mother likewise has no family living close to her home in Mechanicsburg with whom the Child could interact, other than her eight (8) month old baby. Id. at 205:21-24. Although R.M. has parents with whom the Child interacts, the Child rarely sees R.M.'s other relatives. Id. at 106:8-10; 109:23—110:4. Due to the fact that neither Father nor Mother has the ability to conveniently utilize their extended families in raising the Child, this factor will be weighed in favor of neither party.

The sixth factor requires the Court to consider the child's sibling relationships. 23 Pa. C.S.A. § 5328(a)(6). Pursuant to Pennsylvania's doctrine of "family unity," courts should, whenever possible, permit siblings to be raised together. Johns v. Cioci, 865 A.2d 931, 942 (Pa. Super. Ct. 2004). In the case at bar, there are no siblings in Father's family with whom the Child has developed a close relationship. N.T. at 109:13-22. However, during Mother's custodial time,

11

the Child spends a significant amount of time with her eight (8) month old half-sister, allowing her to develop a loving and close relationship with her sibling. Id. at 103:17. Accordingly, this factor weighs in favor of Mother.

The seventh factor requires the Court to consider the well-reasoned preference of the child, based his or her maturity and judgment. 23 Pa. C.S.A. § 5328(a)(7). Although the child's preference is not controlling in a custody case, it does represent "an important factor which must be carefully considered in determining the child's best interest." Com. ex. rel. Pierce v. Pierce, 426 A.2d 555, 559 (Pa. 1981). However, the weight to be accorded the child's preference varies with the age, maturity and intelligence of the child and the reasons given for the preference. Id. In this case, given the young age of the Child, she did not testify to her preferred custody arrangement. Thus, this factor was not relevant to the Court's decision.

The eighth factor requires the Court to consider the attempts of a parent to turn the child against the other parent. 23 Pa. C.S.A. § 5328(a)(8). Here, there was testimony that both parents have disparaged the other party in front of, or within earshot of, the Child. N.T. at 10:8-11; 93:18-22; 137:21—138:8; 139:4-15; 141:16-19; 158:18—159:18; 196:24—197:8. Therefore, this factor will be weighed in favor of neither party.

The ninth factor requires the Court to consider which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate to meet her emotional needs. 23 Pa. C.S.A. § 5328(a)(9). During the Child's life both Father and Mother developed a loving and nurturing relationship with her. Although both parents disagree as to the best interests of the Child, each performs their parental duties in a loving, nurturing and caring way. As a result, the Court will weigh this factor in favor of neither party.

12

The tenth factor requires the Court to consider which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child. 23 Pa. C.S.A. § 5328(a)(10). In the instant matter, there was testimony that Father's life revolves around his Child and he does not engage in any personal activities outside of caring for, and providing for, his daughter. N.T. at 45:2—46:1; 142:9-20. In addition, Father testified that he is attendant to the daily needs of the Child and he is there to comfort her when needed. Id. at 133:9—134:10; 136:5-18; 136:19—137:4; 137:5-11.

Likewise, Mother testified that the Child is integrated to the routine and daily life at R.M.'s house. Mother mentioned that the Child helps set the table for dinner and helps clean up after meals; they watch movies and read books together; they play with Child's half-sister; they engage in household chores together; they eat meals together; they play games together; and they go to church as a family. Id. at 191:20—193:3.

Given the nature and degree of involvement of both parties in the Child's life and the testimony attesting to both parents' ability to satisfy the physical, emotional, developmental, and educational needs of the Child, this factor weighs equally between the parties.

The eleventh factor requires the Court to consider the proximity of the residences of the parties. 23 Pa. C.S.A. § 5328(a)(11). Mother is living in Mechanicsburg, Pennsylvania and Father lives in Bangor, Pennsylvania. N.T. at 99:25—100:1; 119:22-24. The distance between the parties' residences is approximately one hundred and sixteen (116) miles. Id. at 206:16-19. As such, this factor has been considered in fashioning this Court's Order.

The twelfth factor requires the Court to consider each party's availability to care for the

13

child or ability to make appropriate child-care arrangements. 23 Pa. C.S.A. § 5328(a)(12). The Court notes that a parent's work schedule may not deprive that parent of custody if suitable arrangements are made for the child's care in his or her absence. Gerber v. Gerber, 487 A.2d 413, 416 (Pa. Super. Ct. 1985). In the instant matter, T. A. testified that for a period of three (3) years when the parties were still together, she babysat the Child about six (6) days a week at her home. She further testified that this continued for a period after the parties separated. Id. at 87:21—88:6; 89:9-19. After the parties' final separation, Father utilized Godmother to care for Child when needed. N.T. at 164:23—165:2. Father also testified that Child loves being around her Godmother's children and Father takes her there for that purpose, and never for the purpose of "dump[ing] the Child off or [to] get rid of her." Id. at 135:1-7. Godmother corroborated that fact when she testified that although she does not babysit Child after school, Father leaves Child with her when needed and Godmother does, on occasion, feed Child dinner. Id. at 39:12—40:4; 40:20-22.

In the instant matter, both parties confirmed their ability to care for the Child and attend to her daily needs. Each party has assumed the role of primary caretaker throughout the Child's life and the above testimony demonstrates that when the parties are not able to provide care for the Child, they are able to make appropriate arrangements to place the Child in a safe environment. Therefore, this factor will not be weighed in favor of either party.

The thirteenth factor requires the Court to consider the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. 23 Pa. C.S.A. § 5328(a)(13). A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party. Id. It is abundantly clear to

14

the Court that there is considerable hostility between the parties, and that this hostility hampers their ability to communicate with one another. Specifically, the testimony in this case revealed that Father unilaterally enrolled the child in preschool and that he failed to advise Mother of parent-teacher conferences. N.T. at 189:23—190:3; 191:5-8; 221:6-8. Additionally, there was testimony that both parties have withheld custody of the minor Child from one another. Id. at 199:4—200:5; 215:22—216:17. Notwithstanding their mutual mistrust and a history of communication problems, the Court believes that the difficulties between the parties do not preclude a shared custody arrangement. Given the mutuality of their difficulties, this factor will be weighed in favor of neither party.

The fourteenth factor requires the court to consider the history of drug or alcohol abuse of a party or member of a party's household. 23 Pa. C.S.A. § 5328(a)(14). In the case at bar, the testimony demonstrated that neither parent, nor anyone in their households, has a history of drug or alcohol abuse. N.T. at 189:5-14; Deposition of Ashley Milspaw, Psy.D. at 80:19-23, January 28, 2015. Therefore, this factor is not relevant to the Court's decision.

The fifteenth factor requires the Court to consider the mental and physical condition of the parties or member of their households. 23 Pa. C.S.A. § 5328(a)(15). In the present case, Father has diabetes, sciatica, and had a heart attack in 2005. N.T. at 121:12-15; 155:21, December 15, 2014. This, coupled with the lack of testimony regarding Mother or R.M. having any health conditions like those of Father, weighs this factor in favor of Mother. Id. at 121:23—122:11.

Finally, in evaluating the best-interest standard, the Court may consider any other relevant factor. 23 Pa. C.S.A. § 5328(a)(16). The depositions ordered to be performed for the

15

February 9, 2015 hearing, as well as the December 3, 2014 GAL report have been taken into consideration by the Court in fashioning its Order.

## STANDARD OF LAW

### Relocation Factors in 23 Pa. C.S.A. § 5337(h)

It is well-established that, "[w]ith any child custody case, the paramount concern is the best interest of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral, and spiritual well-being of the child." J.R.M. v. J.E.A., 33 A.3d 647, 650 (Pa. Super. Ct. 2011) (quoting Durning v. Balent/Kurdilla, 19 A.3d 1125, 1128 (Pa. Super. Ct. 2011)). In determining whether to grant a proposed relocation, the court shall consider the following ten (10) factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

16

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa. C.S.A. § 5337(h).

## DISCUSSION

### Relocation Factors in 23 Pa. C.S.A. § 5337(h)

First, the Court must consider "[t]he nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life." 23 Pa. C.S.A. § 5337(h)(1). As previously noted, Father has exercised primary physical custody of the Child for the last year and a half. N.T. at 17:21—18:1. During that time, Father has performed his parental duties and acted in accordance with what he believed to be in the best interests of the Child. Id. at 18:5-24; 38:1-21. Besides advancing the Child's academic life, Father is also involved with her ballet, gymnastics, and swimming lessons. Id. at 133:9—134:10. Father also ensures that the Child is clean, that she gets adequate rest, and he is very attentive to her safety. Id. at 131:20—132:3; 136:5—137:4.

17

During the time the parties were living together, Father worked eighty (80) to ninety (90) hours a week, during which time Mother was the primary caregiver to Child. Id. 160:6-11; 163:7-10. After Father received primary physical custody, Mother continued to exercise the same parental duties she performed during her time as the Child's primary caregiver, and the record demonstrates that Mother performed her parental duties admirably. Id. at 191:20—193:3. Presently, Mother does not work outside of the home, but she provides care for her eight (8) month old daughter. Thus, during her custodial time, Mother will be at home with both children, permitting the Child's relationship with her half-sister to grow on a daily basis. The Court finds this to be in the Child's best interests and preferable to the current custody schedule which only permits the Child to see her half-sister about six (6) days a month.

Although both parties have developed a relationship with the Child, due to the fact that the Child has the opportunity to grow up with her half-sister, who is her only sibling, and with whom she is closely bonded, weighs this factor in favor of relocation.

The second factor requires the Court to consider "[t]he age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child." 23 Pa. C.S.A. § 5337(h)(2). Here, Child is almost five (5) years old and currently attends preschool five (5) days a week. N.T. at 132:5-16. Since the Child will start kindergarten in the Fall, her educational life would be undisturbed if Mother were permitted to relocate with the Child. Also, whether Father or Mother exercises primary custody, the Child will live in a home where she will be cared for and have the opportunity to develop as a young woman.

Finally, as the Court has previously noted, Mother lives with her fiancé and the Child's

18

eight (8) month old half-sister, and Father lives alone. Given the Child's ability to be raised in a family environment where she has both a male and female involved in her daily life, as well as a younger half-sister, this factor weighs in favor of relocation.

The third factor requires the Court to consider "[t]he feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties." 23 Pa. C.S.A. § 5337(h)(3). In custody decisions, the court must consider the importance of continuity in the child's life and the desirability to develop a stable relationship with established parental figures and with a known physical environment. Wall, 718 A.2d at 850. "Parental figures" may include individuals living in the households of a child's parents. Id.

In this case, the feasibility of preserving the Child's relationship with the non-relocating party is evidenced, as Mother already resides in Mechanicsburg, and the Child has close and loving relationships with both parties. Thus, there is no reason for the Court to conclude that the Child's relationship with Father would not be well-preserved by a grant of the requested relocation. Further, the shared custody between the parties has already been proven logistically workable and within the parties financial means. Due to the above, this factor will be weighed in favor of relocation.

The fourth factor requires the Court to consider "[t]he child's preference, taking into consideration the age and maturity of the child." 23 Pa. C.S.A. § 5337(h)(4). Due to the Child's age, she did not testify as to her preferred custody arrangement. Thus, this factor was not relevant to the Court's decision.

The fifth factor requires the Court to consider "[w]hether there is an established pattern

19

of conduct of either party to promote or thwart the relationship of the child and the other party." 23 Pa. C.S.A. § 5337(h)(5). As previously discussed <u>supra</u>, there was testimony that both parties have disparaged the other parent in front of, or within earshot of, the Child. N.T. at 93:18-22; 137:21—138:8; 139:4-15; 141:16-19; 158:18—159:18; 196:24—197:8. This was corroborated by the GAL, supporting the notion that both parties hold a great deal of animosity toward one another. <u>Id.</u> at 10:8-11. Thus, the level of conflict between both parties, as discussed <u>supra</u>, evidences that both parties have attempted to thwart the other's relationship with the Child. As such, this factor will be weighed in favor of neither party.

The sixth factor requires the Court to consider "[w]hether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity." 23 Pa. C.S.A. § 5337(h)(6). As noted, Mother does not work, and is relying on R.M. for financial support. N.T. at 112:24—113:4; 205:11-20. The Court finds that R.M. is able to financially support both Mother and Child because he worked in auto detail restoration for about thirty-seven (37) years and he also utilizes rental properties, in addition to his business, which supplements his income. <u>Id.</u> at 102:23—103:4; 103:5-9. Given the dearth of resources available to Mother in Mechanicsburg, the Court finds that her life would be improved by the relocation particularly because she has established a new family, and R.M. is able to financially support the family unit.

The Court is also of the view that Mother would derive a significant emotional benefit from the relocation. Mother already resides in Mechanicsburg, having left the Lehigh Valley after the failure of her marriage to Father. The testimony demonstrates that the parties' marriage was not a happy one, and that Father would sometimes degrade Mother. <u>Id.</u> at

20

158:18—159:18. By contrast, Mother testified that her relationship with R.M. is positive and supportive. As a result of the support Mother has in Mechanicsburg compared to her lack of support elsewhere, this factor will be weighed in favor of the relocation.

The seventh factor requires the Court to consider, "[w]hether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity." 23 Pa. C.S.A. § 5337(h)(7). Notably, the Child's standard of living and her educational opportunities would be substantially the same whether she lives primarily with Father or with Mother. However, the relocation would afford the Child the opportunity to grow up in a household with her Mother, her half-sister, and Mother's fiancé, which is an opportunity the Child does not have with Father. N.T. at 103:17; 142:15-20. Thus, the Court finds that the Child's emotional welfare will be best served by the relocation. As a result of the above analysis, this factor will be weighed in favor of the relocation.

The eighth factor requires the Court to consider "[t]he reasons and motivation of each party for seeking or opposing the relocation." 23 Pa. C.S.A. § 5337(h)(8). Mother testified that she wants to relocate because her living condition would improve and she would have more privacy. N.T. at 104:23—105:5; 184:4-11. Further, the fact that Mother and R.M. are starting a family together, favor Mother's desire to relocate.

Father opposes the relocation because Mother and R.M.'s relationship developed quickly, thus Father questions the safety and stability of placing the Child with Mother and her fiancé. Id. at 153:17-25. However, Mother testified that before she moved in with R.M. she met with his family and he met with the Child, signifying Mother ensured that living with R.M. was not going to present an issue to the Child's safety or well-being. Id. at 183:20—

21

184:3. Also, there was no indication in the record that R.M. house is not a suitable or safe environment in which to raise the Child. As a result, this factor favors relocation.

The ninth factor requires the Court to consider "[t]he present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party." 23 Pa. C.S.A. § 5337(h)(9).[2] Despite the witnesses who testified on behalf of Father verifying his good demeanor and his ability to control his anger issues, the fact remains that Father was convicted of voluntary manslaughter in 1982, and Father's demeanor during the trial demonstrated that he angers quickly and unexpectedly. N.T. at 15:13-18; 16:23—17:20; 52:17-25 59:5-10; 96:1-10; 151:21—153:4. This, coupled with the fact that neither Mother nor R.M. have histories exhibiting abusive behavior, tips the balance of this factor in favor of the relocation.

Finally, the tenth factor requires the Court to consider "[a]ny other factor affecting the best interest of the child." 23 Pa. C.S.A. § 5337(h)(10). The depositions performed for the February 9, 2015 hearing, as well as the GAL's report, have been taken into consideration by this Court in fashioning the Order.

**WHEREFORE**, having considered all relevant factors, this Court enters the following Order:

---

[2] As used in this section, "abuse" has the same definition used in Section 6102(a) of the Protection From Abuse Act, 23 Pa. C.S.A. § 6102(a). 23 Pa. C.S.A. §5322(a).

22

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY**
**COMMONWEALTH OF PENNSYLVANIA**
**CIVIL DIVISION**

R.W.

Plaintiff

vs.                                                          NO. C-48-CV-2013-9535

F.J.W.

Defendant

**ORDER**

**AND NOW,** this _24_ day of March 2015, this Court hereby **ORDERS and DECREES the** following:

1. **RELOCATION.** Mother shall be permitted to relocate to Mechanicsburg, Pennsylvania 17055.

2. **LEGAL CUSTODY.** The parties shall share legal custody of Child   Each parent shall have the right to receive directly from Child 's school copies of her report cards, notices, parent/teacher conferences, and any other information that is released to the custodial parent. Each parent shall further have the right to receive any medical, dental or daycare records or reports released to a custodial parent. In the event the school sends information and/or documentation home with Child  , it is the responsibility of the custodial parent to make a copy of the information and/or document and deliver it to the non-custodial parent within forty-eight (48) hours of receipt.

23

3. **PHYSICAL CUSTODY.** Mother shall have primary physical custody of Child, Father shall have partial physical custody of Child every other weekend beginning from 12:00 pm (noon) on Fridays until 6 pm Sundays. Father's custodial time shall commence on the first weekend following issuance of this Court Order. Neither party, nor anyone in their respective households, shall consume alcoholic beverages during their periods of custody. Neither party, nor anyone in their respective households, shall smoke in the house while exercising custody over Child.

4. **CUSTODY EXCHANGES.** The custody exchanges shall remain at the Hamburg State Police Barracks. Transportation necessary to effectuate the custodial exchanges shall be in accordance with the parties' current practice.

5. **COMMUNICATION.** Both parties shall cooperate and consult with each other regarding matters that will affect Child's life, including but not limited to education, religion, medical, recreational, and related matters. The parties shall promptly advise each other via text or email regarding scheduling any appointments for Child including, but not limited to medical, dental, optical and related appointments. This advanced notice shall serve as an opportunity for the other parent to attend the appointment. The custodial parent shall promptly advise the non-custodial parent of any illness or injury sustained by Child during his or her custodial period.

6. **SUMMERTIME.** During the summertime, beginning with the first full week in June 2015 and ending the week before Child starts school in August 2015, the custody schedule of the parties shall be on a week-on/week-off basis with the exchanges occurring at the Hamburg State Police Barracks on Sundays at 6 pm. Father shall have custody of

24

_Child_ to begin the summer schedule. Each party shall be entitled to two (2) non-consecutive weeks of vacation with _Child_, which shall be exercised on their custodial week, and shall not be exercised on the other party's week of custody. Each parent shall provide the other parent with thirty (30) days' notice in writing (via text or email) of the dates that he or she intends to take vacation with _Child_. In the event the parties have conflicting dates regarding vacation, the parent who first requested the vacation dates in writing shall be granted the requested vacation time. The parties shall provide each other with a written itinerary of all vacation plans no later than ten (10) days prior to the commencement of the vacation. The written itinerary shall include the destination, address, telephone number, travel times and flights (if applicable). Both parties shall share the use of _Child's_ passport when either has arranged for _Child_ to travel to a location where a passport is required. As of 2016, the summertime schedule shall commence the first full week after the end of the school year and end the week before the start of the new school year.

7. **HOLIDAYS.** The parties shall adhere to the following holiday schedule:

   a. In ODD years Mother shall have custody of _Child_ on Easter Sunday, Thanksgiving Day, and Christmas Eve, and Father shall have custody of _Child_ on Easter Eve holiday, Thanksgiving Eve, and Christmas Day;

   b. In EVEN years Father shall have custody of _Child_ Easter Sunday, Thanksgiving Day, and Christmas Eve, and Mother shall have custody of _Child_ on Easter Eve, Thanksgiving Eve, and Christmas Day;

25

i.  Thanksgiving Eve begins at 4 pm on the Wednesday immediately before Thanksgiving Day and ends on Thanksgiving Day at 2 pm; Thanksgiving Day begins at 2 pm and ends on 4 pm the Friday immediately after Thanksgiving;

ii. Christmas Eve begins at 4 pm on December 24 and ends on Christmas Day December 25 at 12 pm; Christmas Day begins at 12 pm on December 25 and ends at 12 pm on December 26;

iii. Easter Eve begins at 4 pm the Saturday immediately before Easter Sunday and ends on Easter Sunday at 12 pm; Easter Sunday begins at 12 pm and ends on 12 pm Easter Monday

The parties shall alternate New Year's Day, Memorial Day, the Fourth of July, Labor Day, as well as any other school holiday. The Holiday Schedule shall begin with Father having custody of Child on Memorial Day.

8.  **FATHER'S DAY & MOTHER'S DAY.** Father shall have custody of Child on Father's Day and Mother shall have custody of Child on Mother's Day. Mother's Day and Father's Day shall begin at 10 am and end at 7 pm.

9.  Child' S BIRTHDAY. Child's birthday shall be shared with the non-custodial parent. The non-custodial parent shall have custody of Child on her birthday from 3 pm to 6 pm.

10. **NON-INTERFERENCE.** Both parents shall refrain from using any critical, condemning, derogatory or hostile language in reference to the other parent or a member of that

26

parent's family/household. Neither party, nor anyone in their respective households, shall attempt or condone, whether directly or indirectly, any conduct which would estrange Child from the other parent, or injure or impair the mutual love and affection Child has with the other parent. At all times each parent shall encourage and foster in Child a sincere respect and affection for the other parent and shall not hamper the natural development of Child 's love and respect for the other parent. Each party shall keep the other advised of a current address and telephone number for Child. The parties shall not discuss custodial or personal matters in front of, or within earshot of Child. Child shall not be prompted to refer to Mother's fiancé as "Dad" "Father" " " or any other related name.

11. **TELEPHONE ACCESS.** The non-custodial parent shall have reasonable ongoing telephone access to Child, and the custodial parent shall not preclude Child from contacting the non-custodial parent at reasonable times. Should Child be unavailable to receive the telephone call from the non-custodial parent, the custodial parent shall be responsible for having Child return the telephone call.

12. **ACTIVITIES.** Neither party shall enroll Child in any activities without the consent of the other party. Both parties have the right to attend these activities and events and participate in them to the extent allowed by the organization. Each parent shall be responsible for Child 's attendance at the activities and events during his or her custodial time. At the time of Child ' s enrollment in a new activity, both parents contact information shall be provided. Child shall not be kept from speaking to, or

27

having contact with, either parent at an event or any other related extra-curricular activity.

13. **CO-PARENTING CLASSES.** The parties shall engage in co-parenting counseling with a provider to be selected by mutual agreement or with the assistance of the parties' counsel. The parties shall participate in co-parenting counseling for the purpose of facilitating cooperative parenting consistency between the households in keeping with Child 's best interests. The cost of the counseling shall be split 50-50 between the parties. If Child is requested to be present for any counseling sessions, the custodial parent shall make arrangements to ensure her attendance.

14. Child's COUNSELING. Child shall continue counseling with Ashley Milspaw, Psy.D of Beacon Psychological Services of Pennsylvania, LLC, until such time as the counselor determines that said counseling is no longer necessary. The parties shall split 50-50 the costs of the counseling sessions. If the counselor requests the participation of either parent in any counseling session, the parties shall ensure their attendance and meaningful participation.

BY THE COURT:

EMIL GIORDANO, J.

28